IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>5171 CAMPBELLS LAND CO., INC.,<br><br>    Debtor. | Bankr. Case No. 19-22715-CMB<br><br>Chapter 11 |
| ROBERT S. BERNSTEIN, as Plan Administrator for the Creditors Trust under the Debtor's confirmed Plan,<br><br>    Plaintiff,<br><br>MEYER, UNKOVIC & SCOTT LLP, a Pennsylvania Limited Liability General Partnership, and ROBERT E. DAUER, JR., an individual,<br><br>    Defendants. | Adv. Pro. No. 21-02063 |

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendants, Meyer, Unkovic & Scott LLP and Robert E. Dauer Jr. (collectively "Law Firm"), by and through their attorneys, Bethann R. Lloyd, Holly M. Whalen and Katherine P. Berquist of DiBella Weinheimer, move to dismiss this case with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Federal Bankruptcy Rule 7012. In support of said Motion, the Law Firm states as follows:

**I. OVERVIEW**

This lawsuit is an attempt by creditors to hold the Law Firm responsible for the failure of a startup business. Specifically, the Law Firm was asked to assist its client in acquiring assets and franchise rights to enable the client an opportunity to proceed with its business plan.

Unfortunately, the business was not profitable and failed. Three years after the work was performed, and 2 years after the bankruptcy filing, Creditors Trust claims the Law Firm committed professional malpractice. There are no allegations of fraud or corporate wrongdoing, only allegations of a failed business based on allegedly flawed business advice as to capitalization at the time of the start-up and thereafter.

The Law Firm moves to dismiss the Complaint on procedural grounds at this time: 1) the claim is time-barred; 2) allegations of deepening insolvency state no claim; 3) alleged ethics violations are not a basis of substantive liability; and 4) Plaintiff's reservation of rights is an improper pleading.

## II. PROCEDURAL BACKGROUND

On July 8, 2019, 5171 Campbells Land Co., Inc. ("Campbells") filed a voluntary bankruptcy Petition under Chapter 11, styled *In Re: 5171 Campbells Land Co., Inc.* at Bankruptcy No. 19-22715-CMB. Prior to that filing, Campbells did not file a Complaint against the Law Firm. Nor was any claim against the Law Firm identified by Campbells in its bankruptcy filings.

On November 12, 2019, Campbells filed its Plan of Liquidation (ECF Doc. 308)("Plan"). Debtor's Chapter 11 Plan of Liquidation transferred all remaining assets to a Creditors Trust, to be overseen by a Plan Administrator and liquidated for the benefit of Creditors. (ECF Doc. 308 pg. 3 of 38; Sec. 8.1). The Plan was confirmed by Order of the Bankruptcy Court dated March 18, 2020. (ECF Doc. 435). No Chapter 11 Trustee was ever appointed. The Plan does not specifically reference any claim against the Law Firm, or make reference to a professional malpractice claim.

On July 6, 2021, the Plan Administrator for the Creditors Trust ("Creditors Trust") filed this adversary action at Case No. 21-02063. On July 19, 2021, the Law Firm filed a Motion to Withdraw Reference of the Case Under 28 U.S.C. §157 and supporting Brief. (ECF Doc. 14 &

15).  Said Motion remains pending, having been transmitted to the District Court. (ECF Doc. 19).

### III. STATEMENT OF THE FACTS

The subject matter of this adversary proceeding is a state law claim of legal malpractice against the Law Firm.  The Creditors Trust claims that the Law Firm rendered faulty business advice to Campbells that led to an undercapitalized and unprofitable business and eventually, Campbells' bankruptcy filing.  Drawing only from the averments in the Complaint for purposes of this Motion, and without admitting the truth of such averments, the Law Firm supplies this brief overview of a very complicated transaction.

In 2012, Campbells was formed as a land-holding commercial investment company. (ECF Adv. Doc. 1, Cmplt. ¶2).  The Law Firm served as its outside legal counsel. (Id.).  In 2016, Campbells became interested in acquiring the rights to develop a Perkins restaurant. (Cmplt. ¶36).  Campbells was not successful in acquiring franchise rights at that time.  (Id.).  However, in 2017, another opportunity for Campbells arose when the owner and operator of a chain of 28 Perkins restaurant franchises (Unique Ventures) filed for bankruptcy. (Cmplt. ¶37).

In December 2017, Campbells prepared a business plan to propose to Perkins, as part of an attempt to acquire the franchise rights. (Cmplt. ¶41).  The Law Firm did not prepare the business plan, but did forward it to Perkins. (Id.).  Although the Creditors Trust Complaint sets forth only a brief excerpt of the business plan,[1] the excerpt reveals that Campbells explained to Perkins its plan for the asset purchase, financing, rent reduction, remodeling and coverage of operating expenses.  (Id.).  Not surprisingly, Campbells planned for financial viability of the Perkins franchise. (Id.).

---

[1] The Creditors Trust Complaint is chalked full of excerpts from documents that are not attached to the Complaint, nor provided with appropriate context. For example, the Complaint selectively references portions of corporate documents, provides partial quotations and even pleads incomplete sentences purportedly taken from deposition transcripts.

{00411845.DOCX:5}

By way of a high-level overview of the structure of the deal, which is described at length in the Complaint, Campbells planned to acquire: 1) the rights to the franchise; and 2) the real estate. Only the franchise rights were part of the Unique Venture's bankruptcy estate. The real estate was to be acquired separately, as an acquisition and lease-back deal. This type of structure allowed Campbells to become the operator of the franchise, but to acquire and resell the real estate to an investor while simultaneously leasing the property back from the investor.

Although the timetable is not well defined in the Complaint, Campbells lined up an investor (Store Capital) as a prerequisite to becoming a qualified bidder for the Perkins franchise rights. (*See*, Cmplt. ¶39).[2] The bid procedures were established pursuant to an Order dated November 21, 2017. Per the Order, to be deemed a "qualified bidder," certain requirements needed to be met, inclusive of proof of the financial capability to close the sale. Also, the bid procedures order expressly forbade any financing contingencies in the bids. (UV Dkt. 779, pg 11).[3]

The bankruptcy auction occurred on January 9, 2018. Campbells was the winning bidder. (Cmplt. ¶44). Thereafter, the Law Firm negotiated the asset purchase agreement. (Cmplt. ¶46). On January 29, 2018, the Court approved the asset sale. (Cmplt. ¶47)(UV Dkt. 970). In its Order approving the asset sale, the Court determined that Campbells had available or would have available all necessary cash and resources to consummate the asset purchase agreement and provided adequate assurance of its ability to perform under the acquired contracts. (Id.)

Consistent with its plan, in February 2018, Campbells then purchased the real estate for

---

[2] The "Sale Motion", bid procedures, auction and other proceedings occurred in the case of *In Re Unique Ventures Group, LLC*, Bankruptcy Docket 17-20526 ("UV Dkt."). The "Sale Motion" can be found at UV Dkt. 700. The Order approving the bid procedures and setting the date of the auction is found at UV Dkt. 779. The January 29, 2018 Order Authorizing Sale (UV Dkt. 970) further confirms that the auction occurred on January 9, 2018, the final hearing occurred on January 24, 2018 and the Order authorizing Sale was entered on January 29, 2018.
[3] At the motion to dismiss stage, a court may take judicial notice of the docket entries in a case and the contents of the bankruptcy filings to determine the timing and status of case events as well as facts not reasonably in dispute. In re Trichilo, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015).

approximately $20 million, sold it to the investor (Store Capital) and entered into a lease with the investor. (Cmplt. ¶52-54).  As part of the acquisition lease-back deal, the investor required Campbells to provide $5 million in additional financial security and Campbells did so. (Id.).  The Creditors' Trust Complaint omits the timetable for when the investor demanded the security deposit.  However, it may be reasonably inferred that this requirement arose *prior* to the January auction, as proof of financing was a prerequisite to being a qualified bidder, as explained above.

Upon closing the deal, the Creditors Trust alleges that Campbells suffered financial difficulties from the outset as the structure of the deal did not allow Campbells to operate profitably and hidden expenses emerged.  For instance, upon taking over the franchises, Campbells discovered multiple health code violations, overflowing toilets, roof leaks, rat infestations, equipment failures, structural repairs and other "terrible" conditions requiring remediation. (Cmplt. ¶105).

Also from the start, Campbells failed to pay Perkins' required royalties and marketing fees. (Cmplt. ¶69).  On May 4, 2018, Perkins sent Campbells a 30-day notice of default letter. (Id.).  Campbells did not cure the defaults, so Perkins terminated the franchise rights on June 4, 2018. (Cmplt. ¶73).  Nevertheless, Perkins continued to work with Campbells, allowing it to continue operations under the Perkins name and a temporary license, subject to additional requirements, such as becoming current on overdue financial obligations. (Cmplt. ¶75).  However, financial and other defaults continued.

By October 2018, Perkins outlined the various breaches of the temporary license agreement. (Cmplt. 78).  In addition to still being delinquent on payments, Campbells was non-compliant with training requirements, purchasing from unapproved vendors, offering unapproved "specials" to customers and not appropriately addressing guest complaints. (Cmplt. ¶78).  Perkins

threatened to terminate the temporary license. (Cmplt. ¶79.) The defaults continued, leading to termination of the temporary license in June 2019. (Cmplt. ¶80-84).

After the license terminated, Campbells continued to use the Perkins name without permission. (Cmplt. ¶86-89). Accordingly, on June 27, 2019, Perkins filed a lawsuit in the Eastern District of Tennessee and obtained a temporary restraining order requiring Campbells to cease using its name. (Cmplt. ¶90). Thereafter, Campbells filed for bankruptcy in July 2019.

Although the Law Firm is not alleged to have been (and was not) Campbells' financial advisor, the gist of the Creditors Trust Complaint is that the Law Firm should have advised Campbells of financial risks inherent in the deal. By way of example, the Creditors Trust claims the Law Firm never explained to Campbells that the investor in the real estate portion of the deal might require security, or that by providing such security, Campbells' ability to capitalize the business and operate profitably might be impacted. (Cmplt. ¶54-57). The Creditors Trust also claims that the court approved asset purchase agreement should have contained an escape clause in the form of a financing contingency (despite that the Court approved bid procedures expressly forbade it). (Cmplt. ¶49-50).

Aside from financing issues, the Creditors Trust claims the Law Firm failed to advise Campbells of its right to inspect the restaurants prior to the acquisition. (Cmplt. ¶58-59). The Creditors Trust also blames the Law Firm for Campbells' post-acquisition failure to pay sales tax, alleging that the Law Firm should have counseled Campbells as to governmental compliance. (Cmplt. ¶105).

Finally, the Creditors Trust contends that the Law Firm should have counseled Campbells to file for bankruptcy in May 2018, just a few months after having acquired the franchise, to protect the franchise rights, apparently for the ultimate benefit of the very same creditors who are bringing

this action--and who were never the Law Firm's clients, nor owed a duty of care and whose interests likely were not aligned with the actual client of the Law Firm. (Cmplt. ¶70-73).

## IV.  ARGUMENT

### A. THIS ACTION IS BARRED BY THE 2 YEAR STATUTE OF LIMITATIONS.

All of the alleged negligence by the Law Firm occurred prior to the termination of the Perkins' temporary license in June 2019.  To the extent there is arguably any viable claim for legal malpractice, the Creditors Trust had 2 years within which to file it.  As this action was not filed within that 2-year period, and because the Creditors Trust does not enjoy the benefit of any extension, this action is time barred and should be dismissed.

#### 1. Pennsylvania substantive law applies to the instant legal malpractice action.

"A federal court sitting in diversity must apply state substantive law and federal procedural law."  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).  All of the events at issue involve activity in Pennsylvania and representation by a Pennsylvania law firm of a Pennsylvania entity.   Therefore, Pennsylvania substantive law will apply.

#### 2. In Pennsylvania, a legal malpractice claim is subject to a 2 - year statute of limitations.

The Creditors Trust asserts a claim for legal malpractice/professional negligence against the Law Firm.  In Pennsylvania, a two-year limitations period applies to such a claim.  Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 571 (Pa. Super. 2007); 42 Pa.C.S. § 5524(3), (7).  Pennsylvania favors the strict application of the statutes of limitations.  Wachovia, 935 A.2d at 572.

In Pennsylvania, "the trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty."

Id., at 572 (emphasis added).  In its seminal decision in Wachovia, the Superior Court explained the application of the occurrence rule in legal malpractice actions in Pennsylvania, stating:

> Pennsylvania law provides that:
>
> the occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty. Bailey v. Tucker, 533 Pa. 237, 251, 621 A.2d 108, 115 (1993). An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Pocono Raceway v. Pocono Produce, Inc., 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. Id. 503 Pa. at 85, 468 A.2d at 471.  Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 449 Pa. Super. 367, 674 A.2d 244, 246-47 (Pa. Super. 1996).

Id., at 572 (emphasis in original).  Thus, the Court held, "the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause." Id. at 572-573.

The fundamental assertion by Plaintiffs in this action is that the Law Firm failed to provide business advice at the time Campbells was structuring a deal to purchase the Perkins franchise and acquire real estate that was also necessary to the deal.  One nuance of the claim is that the Law Firm did not explain the documents sufficiently.  Another nuance is that the Law Firm should have advised Campbells of the option to file bankruptcy in 2018.  Regardless of the theory of liability, all of the alleged negligent conduct necessarily occurred between January 2018, when the franchise was obtained, and June 2019, when franchise rights were permanently lost.  The Creditors' Trust filed this action on July 6, 2021, outside the 2-year statute of limitations period.  Therefore, the Creditors Trust's claims against the Law Firm are time-barred and should be dismissed.

### 3. Section 108 of the Bankruptcy Code does not extend the time for the Creditors Trust to file a legal malpractice claim.

The only possible means to extend the statute of limitations would be if by operation of law, the statute of limitations was extended. However, as explained below, no such extension applies to the Creditors Trust.

Section 108(a) of the Bankruptcy Code provides a mechanism for a trustee to file a claim that otherwise would be time-barred. Specifically:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, **the trustee may commence such action** only before the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

11 U.S.C. §108 (emphasis supplied). Section 108, by its plain reading, allows *only* a trustee to commence such an action on an untimely basis, pursuant to the above statutory authority. Section 108 is not ambiguous.

In a Chapter 11 case, where a trustee is often not appointed, a separate statutory provision, 11 U.S.C. §1107(a), affords a debtor-in-possession all of the powers and duties of a trustee. *See*, Wood & Locker, Inc. v. Doran & Assocs., 708 F. Supp. 684, 687 (W.D. Pa. 1989)(Section §1107(a) grants to a debtor in possession the rights granted to the trustee under Section §108.) "[V]arious courts have looked at the provisions of Chapter 11 and have concluded that Chapter 11 debtors-in-possession have the same rights as a trustee under Section 108(a)." In re McConnell, 390 B.R. 170, 179 (Bankr. W.D. Pa. 2008). Accordingly, if this case had been initiated by a trustee or the debtor-in-possession, Section 108 would arguably apply to extend the statute of limitations. Some (but not all) courts have also recognized Section 108(a)'s extension in the context of a

Chapter 13 debtor. *See*, Id.; *cf*. Straub v. Richardson, 92 So. 3d 548, 551 (La. App. 1 Cir. 5/2/12)(rejecting the application of Section 108(a) and discussing a split among the bankruptcy court decisions on this very issue).

However, creditors are not conferred the same tolling power, as was recognized in In re McConnell, 390 B.R. at 179. Here, the Creditors Trust filed the action. The Creditors Trust is neither the trustee, the debtor-in-possession nor the debtor.[4] Rather, Creditors Trust is exactly as it sounds, a trust created post-confirmation for the benefit of the creditors. (ECF Doc. 308, Art. 1.24). Although Creditors Trust desires to stand in the shoes of the debtor, it is not the debtor. As such, Section 108 does not apply to extend the time period for Creditors Trust to file an action against the Law Firm.

Within the Third Circuit, the application of Section 108(a) to a creditor/assignee has not been discussed extensively. As noted above, in In re McConnell, the Bankruptcy Court for the Western District of Pennsylvania noted that creditors are not conferred tolling power. 390 B.R. at 179. In support of that proposition, the Court cited U.S. For Use of American Bank v. C.I.T. Const. Inc. of Texas, 944 F.2d 253 (5th Cir. (Tex.) 1991). In U.S. for Use of American Bank, the Fifth Circuit concluded that that Section 108(a) did not "throw a limitational lifesaving device" to a creditor attempting to assert a tardy claim. In its analysis, the Court noted: "The purpose of section 108(a) dictates the conclusion that its rights extend only to trustees and debtors-in-possession, and not to creditors."

> In contrast to the estate-preserving motivations of a trustee or debtor-in-possession, American's position, as a creditor, resembles that of a post-confirmation *debtor* attempting to obtain the two year extension of section 108(a) to further its *own* interests. Post-confirmation

---

[4] Debtor's Chapter 11 Plan of Liquidation transferred all remaining assets to a Creditors Trust, to be overseen by a Plan Administrator and liquidated for the benefit of Creditors. (ECF Doc. 308 pg. 3 of 38; Sec. 8.1). The Plan Administrator was granted the powers of a trustee under Sections 704 and 1106. (Id. Sec. 8.1.1). The Debtor was left with no assets. The Plan of Liquidation was confirmed on March 18, 2020. (ECF Doc. 435).

> debtors are not entitled to the tolling provisions of section 108(a) because their interests diverge from those of the creditors of the bankruptcy estate. Id.

The Third Circuit referenced this Fifth Circuit authority briefly, but favorably, in a footnote in WRS, Inc. v. Plaza Ent., Inc., 402 F.3d 424, 430 (3d Cir. 2005).

A similar conclusion was reached in Motor Carrier Audit & Collection Co., a Div. of Delta Traffic Serv. v. Lighting Prod., Inc., 113 B.R. 424, 426 (N.D. Ill. 1989), wherein a District Court considered the extent to which an assignee could invoke the benefits of Section 108(a) to extend the statute of limitations period. Therein, the District Court held that it would be inconsistent with the plain language of the Bankruptcy Code to allow a mere purchaser or assignee of a Chapter 7 debtor's claim to take advantage of Section 108. In Motor Carrier, the Court considered the distinction between an agent of a trustee and an assignee. If truly trustee's agent, Section 108 might apply, but as an assignee, it would not. Id. at 426.

A similar analysis and result were reached in Roach v. Option One Mortg. Corp., 598 F. Supp. 2d 741, 755 (E.D. Va.), aff'd, 332 F. App'x 113 (4th Cir. 2009). Therein, the Court recognized that when a debtor files a bankruptcy petition before the statute of limitations has expired, the bankruptcy trustee may file a claim on debtor's behalf either before the statute of limitations expires, or within 2 years of the petition. "[The] two-year extension pursuant to §108(a) is limited to circumstances where, unlike here, a claim is both commenced during pendency of the bankruptcy proceedings and commenced by someone acting as the bankruptcy trustee." Id. The extension granted by Section 108(a) is for the benefit of the estate and is personal to the trustee. Id. at 756.

Assignees of claims are not entitled to the benefit of Section 108(a). *See*, In re Fiorillo, 494 B.R. 119, 152 (Bankr. D. Mass. 2013)("Because the assignors of certain claims being asserted

by the Bankruptcy Trustees are not debtors, Bankruptcy Code § 108(a) is inapplicable to those claims."); *See also*, Lehman Bros. Holdings v. Evergreen Moneysource Mortg. Co., 793 F. Supp. 2d 1189, 1196 (W.D. Wash. 2011)(holding that because claims were assigned after the date of the bankruptcy petition, the extended statute of limitations did not apply to those claims); Sender v. Mann, 423 F. Supp. 2d 1155, 1166 (D. Colo. 2006)(holding that because the creditors' claims were assigned after the date of the bankruptcy petition, the extended statute of limitations did not apply to those claims).

To the extent Creditors Trust seeks to invoke equitable principles of the courts in the administration of bankruptcy proceedings to seek a non-literal application of Section 108(a) to its claims, Creditors Trust's own conduct precludes any such remedy. As noted above, all of the alleged negligence by the Law Firm occurred prior to the termination of the Perkins' temporary license in June 2019. In fact, the Complaint focuses primarily on the events in January/February 2018, when the franchise rights and real estate were acquired. And, it is Creditors Trust's theory that as early as a few months after acquisition, still in early 2018, that the Law Firm should have been discussing the option of bankruptcy with Campbells—as apparently Creditors Trust believes the business should have been given no opportunity to succeed. Campbells' Plan of Liquidation transferring all remaining assets to Creditors Trust was filed on November 12, 2019. (ECF Doc. 308.) The Plan of Liquidation was confirmed on March 18, 2020. (ECF Doc. 435.) This action was filed in July 2021, over a year after Creditors Trust was formed, and nearly 3 years after the events at issue.

Despite depositions having already been taken in the matter in July and August 2019, Creditors Trust waited until July 6, 2021, almost 16 months after the Court's approval of the Plan and transfer of the remaining assets to it to file this adversary action. Equity, however, will not

{00411845.DOCX:5}

aid someone who deliberately foregoes an opportunity to discover material facts. *See* Banco Urquijo, S.A. v. Signal Bank/Maryland, 861 F.Supp. 1220, 1251 (*citing*, Morgan Guaranty Trust Company v. American Savings and Loan Association, 804 F.2d 1487, 1494 (9th Cir.1986); *see also*, Gaudiosi v. Mellon, 269 F.2d 873 (3rd Cir.1959) (one who comes into equity must come with clean hands); In re North Broadway Funding Corp., 34 B.R. 620, 623 (Bankr. E.D.N.Y.1983) (equity should not intrude "to relieve a party from a conscious course of action"). That is precisely what Creditors Trust attempts to do here – obtain relief from its conscious course of action in failing to timely pursue its purported claim. It cannot be permitted to do so.

Turning back to the statute itself for guidance, the plain text of Section 108(a) controls. It states: "the trustee may commence such action[.]"  11 U.S.C. §108(a). The Creditors Trust is not the trustee. Creditors Trust is not an agent of any trustee. There was never a trustee in this Chapter 11 bankruptcy case. The Creditors Trust is not the debtor nor acting on behalf of the debtor. Creditors Trust is acting on behalf of itself, for the benefit of the creditors of debtor. One would need ignore the plain language and torture the meaning of Section 108(a) to find that a Creditors Trust, intending to benefit only the creditors, is entitled to the extension afforded by Section 108(a). Only a trustee is entitled to the extension afforded by Section 108(a) and therefore, this claim is time barred.

### B. ALLEGATIONS OF DEEPENING INSOLVENCY SHOULD BE STRICKEN AS NOT STATING A VIABLE BASIS FOR A CLAIM.

Creditors Trust's claim hints at a claim of deepening insolvency, although not expressly pled as a separate claim. Specifically, in paragraph 9 of the Complaint, Creditors Trust alleges that because of the Law Firm's actions, Campbells suffered "deepening insolvency" and brings this action to recover such damages. (ECF Doc. 1, ¶9). Likewise, in paragraph 107, Creditors

Trust alleges "increased insolvency of the Company in excess of $30 million" are the damages sought. Further, in paragraph 112(p) and elsewhere, Plaintiff alleges that the Law Firm owed duties to the "insolvent company."

It appears that Plaintiff is being a bit clever in attempting to state a claim of deepening insolvency indirectly. In <u>Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.</u>, 267 F.3d 340, 347 (3d Cir.2001), the Third Circuit Court of Appeals described "deepening insolvency" as a type of "injury to the debtors' corporate property from the *fraudulent* expansion of corporate debt and prolongation of corporate life. <u>Lafferty</u> arose out of the bankruptcy of two lease financing corporations that purportedly operated as a "Ponzi scheme." To the extent such a claim is even viable (as it has not specifically been recognized in Pennsylvania), only fraudulent conduct can support such a claim, not negligence. <u>Id.</u>; <u>In re CitX Corp., Inc.</u>, 448 F.3d 672, 681 (3d Cir. 2006).

There are no allegations of fraud in the Complaint; nor could there be given the context of what occurred. If a claim of deepening insolvency is not viable, the allegations of damages based on a theory of deepening insolvency have no place in this litigation. Therefore, all averments of deepening insolvency, all damages based on deepening insolvency, and any claim for deepening insolvency must be stricken from the Complaint.

### C. PLAINTIFF'S ALLEGED VIOLATION OF ETHICS RULES IS IMPROPER AND FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE BASED.

As part of Count I, alleging legal malpractice, the Creditors Trust alleges multiple and generic violations of the Pennsylvania Rules of Professional Conduct, specifically, Rule 1.1 Competence, Rule 1.3 Diligence, Rule 1.4 Communications, Rule 1.7 Conflicts, Rule 2.1 Advisor and Rule 8.4 Misconduct.[5]  The pleading of ethics violations in the context of legal malpractice

---

[5] Technically, the Complaint refers to the "Pennsylvania Rules of Civil Procedure," but presumably, that was in error, as the citations only make sense if read to be an alleged violation of the Pennsylvania Rules of Professional Conduct.

{00411845.DOCX:5}

case is improper and should be stricken.

The Preamble to the Rules of Professional Conduct makes quite clear that the Rules are not to be used as a basis for civil liability. (*Preamble*, RPC, nt. 19). The Preamble explains:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such case that a legal duty has been breached. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. **They are not designed to be a basis for civil liability.** Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty. Id. (emphasis supplied).

Here, Creditors Trust, who was never a client of the Law Firm, is invoking the ethics rules improperly as a basis for substantive liability.

As noted in Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1284 (Pa. 1992), there can be confusion between the duties under the rules of ethics and legal rules that create actionable liability. An alleged violation of the rules of ethics, however, does not mean that the conduct is actionable. Id. at 1284. The Code of Professional Conduct does not have the force of substantive law. In re Est. of Pedrick, 505 Pa. 530, 535, 482 A.2d 215, 217 (1984). Further, it is well established in Pennsylvania that the Rules of Professional Conduct alone cannot be the basis for civil liability. Struck v. Binns, 1995 WL 57481, at *6 (E.D. Pa. Feb. 10, 1995).

> In this Commonwealth, a violation of Rules of Professional Conduct by itself cannot form the basis for a legal malpractice claim. By extension, were Pennsylvania courts to allow legal malpractice claims arising out of a mere violation of the rules of civil procedure, the courts would be overwhelmed.

Borough of Phoenixville v. Puleo, 2019 WL 2399956, at *2, nt. 9 (Pa. Commw. Ct. May 2, 2019)(unreported).  Thus, Maritrans, *supra*, and its progeny make clear that an ethics violation is not necessarily actionable, conduct that is not an ethics violation could still be actionable, and in the right context, both ethics and standards of care might overlap.  However, this is not such a case.  Plaintiff's general and non-specific inclusion of citations to the ethics rules merely is tantamount to use of the rules as a procedural weapon against the Law Firm.

Tellingly, the ethics rules are cited in conclusory and generic fashion, adding nothing of substance to the statement of claims.  For instance, Creditors Trust cites RPC 1.3, diligence.  Rule 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client."  There is no explanation for how or in what way this was violated.  To the extent Creditors Trust alleges different advice should have been rendered or additional options discussed at an earlier time, that is a standard of care issue, not an ethics issue.  Nothing about the factual context pled by Plaintiff suggests that Rule 1.3 is remotely applicable.

As another example, Creditors Trust invokes RPC 2.1, Advisor, which provides:

> In representing a client, a lawyer shall exercise independent professional judgment and render candid advice.  In rendering advice, the lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

The Creditors Trust does not even attempt to explain the application of this Rule to the case, because there is none.  Again, if it is Creditors Trust's theory that the advice rendered was deficient, that allegation is properly resolved as an exercise in determining the appropriate standard of care and without reference to the Rules of Professional Conduct.

Particularly inappropriate is Creditors Trust's nonspecific reference to RPC 8.4, Misconduct.  This Rule applies only to situations where a lawyer is attempting to or in violation

of the ethics rules, committing criminal acts, engaging in dishonesty, committing harassment in the practice of or other similar conduct. Rule 8.4 has no application whatsoever to this case. This is a serious allegation, and yet there is no conduct pled that could possibly or logically fall within the parameters of Rule 8.4 based on the Complaint. At best, this is just another duplicative pleading of the claim of negligence.

Plaintiff's inappropriate resort to Rule 8.4 and the other rules of ethics is a transparent attempt to utilize the rules of ethics as a procedural weapon. The ethics rules are not a basis for liability. The citations add nothing whatever to the case. Moreover, these assertions are made by a party who was never a client of the Law Firm (and whose members are adverse to the Law Firm's actual client). For all of the above reasons, all references to the Rules of Professional Conduct should be stricken from the Complaint.

### D. CREDITORS TRUST IS NOT ENTITLED TO RESERVE THE RIGHT TO FILE ADDITIONAL CLAIMS AND SUCH RESERVATION SHOULD BE STRICKEN FROM ITS COMPLAINT.

The Creditors Trust's Complaint contains a reservation of rights as follows: "The Plaintiff reserves the right to amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against the Defendants as may be warranted under the circumstances and allowed by law." (ECF Adv. Doc. 1, ¶118). There is no such right in the Bankruptcy Rules or the Federal Rules of Procedure. Rule 8 requires a short and plain statement of the claim. FRCP 8(a). It contains no option to reserve the right to add claims.

Moreover, it has been held to be improper to include a reservation of rights in a pleading. *See*, Avocent Redmond Corp. v. United States, 85 Fed. Cl. 724, 726 (2009); Paducah River Painting, Inc. v. McNational Inc., 2011 WL 5525938, at *5 (W.D. Ky. Nov. 14, 2011).

Defendants are entitled to know the nature of the claim. If Creditors Trust believes that at

{00411845.DOCX:5}

some future time, there is a need for amendment, it may follow the procedural requirements of the Federal Rules to attempt to make such amendment. *See*, FRCP 15. Until then, Plaintiff's improper reservation of rights subverts the Rules of Civil Procedure, violates the Law Firm's entitlement know the nature of the claims (which is basic due process) and should be dismissed and/or stricken from the Complaint.

## CONCLUSION

Defendants respectfully request that the Court grants their Motion to Dismiss for the reasons stated above and in the Motion itself and enter judgment in their favor and against Plaintiff.

**JURY TRIAL DEMANDED**

Respectfully submitted,

DIBELLA WEINHEIMER
Law & Finance Building
429 Fourth Avenue, Suite 200
Pittsburgh, PA  15219
Phone: 412-261-2900
Fax: 412-261-3222

*/s/Holly M. Whalen*
Holly M. Whalen, Esquire
Pa. ID #84878
hmw@whc-pc.com
hwhalen@d-wlaw.com

Bethann R. Lloyd
Pa. ID #77385
brl@whc-pc.com
blloyd@d-wlaw.com

Katherine P. Berquist, Esquire
Pa. ID #94654
kpb@whc-pc.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the within **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** has been served on all counsel and parties of record, through the Court's ECF Filing system, on this 6th day of August, 2021, to the following:

| | |
|---|---|
| Matthew M. Herron, Esquire<br>mmh@horronbiz.com<br>Nicholas A. Miller, Esquire<br>nam@herronbiz.com<br>HERRON BUSINESS LAW<br>607 College Street, Suite 101<br>Pittsburgh, PA 15232<br>*Local Counsel to Special Counsel*<br>*to the Plan Administrator* | David C. Cimo, Esquire<br>dcimo@cmmlawgroup.com<br>Marilee A. Mark, Esquire<br>mmark@cmmlawgroup.com<br>CIMO MAZER MARK PLLC<br>100 S.E. 2nd Street, Suite 3650<br>Miami, FL 33131<br>*Special Litigation Counsel to*<br>*the Plan Administrator* |

Respectfully submitted,

DIBELLA WEINHEIMER
Law & Finance Building
429 Fourth Avenue, Suite 200
Pittsburgh, PA  15219
Phone: 412-261-2900
Fax: 412-261-3222


*/s/ Holly M. Whalen*
Holly M. Whalen
Pa. ID #84878

{00411845.DOCX:5}