# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>5171 CAMPBELLS LAND CO., INC.,<br><br>  Debtor. | Bankr. Case No. 19-22715-CMB<br><br>Chapter 11 |
| ROBERT S. BERNSTEIN, as Plan Administrator for the Creditors Trust under the Debtor's confirmed Plan,<br><br>  Plaintiff,<br><br>v.<br><br>MEYER, UNKOVIC & SCOTT LLP, a Pennsylvania Limited Liability General Partnership, and ROBERT E. DAUER, JR., an individual,<br><br>  Defendants. | Adv. Pro. No. 21-02063-CMB |

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS AND BRIEF [ECF ADV. DOCS. 25 AND 26]

The Plaintiff, ROBERT S. BERNSTEIN (the "Plan Administrator" or "Plaintiff"), in his capacity as Plan Administrator for the Creditors Trust under the confirmed Plan, as successor to the estate of the Debtor, 5171 Campbells Land Co., Inc. (the "Debtor," the "Company" or "5171 Campbells"), by and through undersigned counsel, files this Response Brief in Opposition to the Motion to Dismiss [ECF Adv. Doc. 25] (the "Motion") and Brief [ECF Adv. Doc. 26][1] (the

---

[1] References to [ECF Adv. Doc. ___ ] refer to the following docket: Adv. Pro. No. 21-02063-CMB, *Bernstein v. Meyer, Unkovic & Scott LLP and Robert E. Dauer, Jr.* (the "Adversary Proceeding"), United States Bankruptcy Court for the Western District of Pennsylvania. References to [ECF Doc. ___ ] refer to the following docket: Bankr. Case No. 19-22715-CMB, *In re 5171 Campbells Land Co., Inc.,* United States Bankruptcy Court for the Western District of Pennsylvania.

"Brief") filed by Defendants MEYER, UNKOVIC & SCOTT LLP ("Meyer Unkovic"), and ROBERT E. DAUER, JR. ("Dauer") (sometimes collectively referred to as "Defendants"), and in support thereof, states as follows:

## INTRODUCTION

Defendants' Motion should be denied in its entirety. Section 108 of the Bankruptcy Code extended the time for the Plan Administrator, successor to and representative of the estate of the Debtor, to file this Adversary Proceeding, and no statute of limitations defense exists. Further, the Plan Administrator does not assert a claim for deepening insolvency and no basis exists to strike deepening insolvency allegations. Similarly, the violation of ethics rules allegations are proper, as such violations may be used to inform and define a standard of care, and therefore, no basis exists to dismiss or strike such allegations. Finally, while the Plan Administrator submits that no basis exists to dismiss or strike the Plan Administrator's reservation of rights, the Plan Administrator does not object to this sole request to strike by Defendants, as the Plan Administrator agrees that he retains all rights to amend the Complaint in accordance with Federal Rule of Civil Procedure 15, made applicable by Federal Rule of Bankruptcy Procedure 7015, notwithstanding such reservation of rights in the Complaint.

## ARGUMENT

**I. Section 108 of the Bankruptcy Code Extended the Time for Plan Administrator to File this Adversary Proceeding and No Statute of Limitations Defense Exists**

Section 108(a) of the Bankruptcy Code tolled the statute of limitations for both the Debtor and the Plan Administrator for the Creditors Trust under the confirmed Plan, as successor to and representative of the estate of the Debtor, to commence this Adversary Proceeding for legal malpractice/professional negligence against the Defendants. In their Motion and Brief, Defendants misconstrue basic principles of bankruptcy law and erroneously assert that 11 U.S.C. §108(a) does

2

not apply to the Plan Administrator for the Creditors Trust, arguing that the Creditors Trust is asserting assigned or creditor claims. This is simply not correct.

Rather, the Plan Administrator for the Creditors Trust is a representative of and successor to the Debtor's bankruptcy estate, who stepped into the shoes of the Debtor, with the right, power, and authority to bring the legal malpractice/professional negligence claims that belonged to the Debtor against the Defendants, for the benefit of Debtor's estate and creditors, and as such, is entitled to the benefit of Section 108(a). Defendants ignore or misunderstand this distinction and the pertinent Bankruptcy Code, Plan, and Confirmation Order provisions which indisputably provide that the Plan Administrator is acting as and under his authority as a representative of and successor to the Debtor and Debtor's estate. Moreover, and tellingly, Defendants do not cite to a single case where Section 108 was found to be inapplicable to extend the statute of limitations in the context of a Chapter 11 post-confirmation representative of a bankruptcy estate, such as liquidating trustees, plan administrators, disbursing agents, and the like, asserting claims of and damages to the Debtor, for the benefit of the estate and creditors.

Numerous courts have concluded that Chapter 11 estate representatives other than a trustee or a debtor in possession – including liquidating trustees, plan administrators, disbursing agents, and creditor committees – can invoke the tolling provisions of Section 108. *See, e.g., In re Antioch Litigation Trust (Miller v. McDermott Will & Emery LLP),* 500 B.R. 755, 760-764 (S.D. Ohio 2013)(after extensive analysis of Section 108 and applicable case law, holding that the liquidating litigation trustee, on behalf of the trust, is entitled to Section 108(a) tolling, and therefore, the legal malpractice claim at issue survived as a matter of law); *In re Greater Se. Comty. Hosp. Corp. (Alberts v. Tufts et. al),* 333 B.R. 506, 534-538 (Bankr. D.D.C. 2005)(after extensive analysis of Section 108 and applicable case law, holding that liquidating trustee of liquidating trust established

3

under debtors' confirmed Chapter 11 plan is a representative of the estate, and therefore, the trust may rely on Section 108(a) in connection with the asserted legal malpractice and breach of fiduciary duty claims); *In re O.E.M./Erie, Inc. (Schaffner v. McCallum et. al),* 405 B.R. 779, 787-788 (Bankr. W.D. Pa. 2009)(after analysis of Section 108 and applicable case law, holding that Section 108(a) extended the statute of limitations for a plan administrator's cause of action for breach of fiduciary duty, and denying defendant's motion to dismiss); *In re Fruehauf Trailer Corp.,* 250 B.R. 168, 185 (D. Del. 2000)(if the statute of limitations has not expired before filing of the bankruptcy petition, liquidating creditor trust's commencement of state law causes of action less than two years later is deemed timely under Section 108); *In re Trinsum Group, Inc.,* 460 B.R. 379, 396 (Bankr. S.D.N.Y. 2011)(in the context of a disbursing agent under a liquidating Chapter 11 plan, noting that in bankruptcy, the filing of a bankruptcy petition extends the filing time by two years pursuant to Section 108); *In re Walnut Leasing Co., Inc.,* 1999 WL 729267, *6 (E.D. Pa. Sept. 8, 1999)(because the statute of limitations had not yet run on the bankruptcy petition date, under the Section 108 tolling provision, the creditors' committee had two years to file the cause of action); *Official Comm. Of Unsecured Creditors of Corell Steel v. Fishbein & Co.,* 1992 WL 196768, *3 and n. 6 (E.D. Pa. Aug. 10, 1992) (because under Chapter 11, a debtor-in-possession has the powers and duties of a trustee, a creditors' committee standing in the shoes of the debtor is acting like a trustee and is entitled to the tolling provision of Section 108).

In reconciling the term "trustee" in Section 108 to its application to a liquidating trust:

> It makes no sense that an estate's state law claims could have been pursued by "the trustee" by virtue of Section 108(a) until the fall of 2004 but that this power disappeared into the ether when these same claims vested in a liquidating trust pursuant to 11 U.S.C. Section 1123(b)(3)(B) as successor to the trustee under a plan confirmed in the spring of 2004. When Section 108(a) refers to "the trustee['s]" pursuit of claims, it only makes sense to view that provision as entailing a successor to the trustee's power to pursue such claims to

4

> benefit creditors. In other words, Section 108(a) ought to apply when there has been a confirmed plan vesting identified claims in a successor who is acting at the behest of creditors (or who is a successor by reason of a negotiated acquisition of such claims from the estate as part of the confirmed plan, which the creditors were able to evaluate with respect to the benefits conferred upon them).

*Antioch Litigation Trust,* 500 B.R. at 762 (quoting *Greater Se. Comty. Hosp. Corp.*, 333 B.R. at 536). "[B]ecause the Congressional intent behind Section 108(a)'s two-year extension of the statute of limitations is to preserve the interests of the debtor's estate, that protection applies 'when there has been a confirmed plan vesting identified claims in a successor who is acting at the behest of creditors (or who is a successor by reason of a negotiated acquisition of such claims from the estate as part of the confirmed plan, which the creditors were able to evaluate with respect to the benefits conferred upon them).'" *Id.* (quoting *Greater Se. Comty. Hosp. Corp.*, 333 B.R. at 536).

> [T]he Plan created a new entity, the Trust, to prosecute and disburse unliquidated claims of the estate. The Trust, as successor representative of the estate, stands in the shoes of the debtor-in-possession who, in turn, stands in the shoes of the trustee under 11 U.S.C. Section 1107. As such, it is subject to the same defenses that are applicable to a bankruptcy trustee and is governed by the same statute of limitations provisions, including Section 108(a). Id. at 537.

*Id.* at 762-763 (quoting *Greater Se. Comty. Hosp. Corp.*, 333 B.R. at 537).

"The Trust here was created pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, and as a successor to bankrupt [debtor], to pursue claims for the benefit of creditors of [debtor]." *Id.* at 763. "The Trust is acting on behalf of a debtor-in-possession, as a representative of its estate, and is pursuing claims that belonged to the debtor for the benefit of the debtor's creditors." *Id.* When the Plan and Confirmation Order expressly note that the liquidating trustee is a representative of the Debtor's bankruptcy estate pursuant to Section 1123(b)(3) of the Bankruptcy Code, with authority to litigate and liquidate the Trust assets, the Trust is entitled to Section 108(a)

tolling. *Id.* at 764.

This is exactly what occurred in the instant case. On July 8, 2019 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under Chapter 11, title 11 of the United States Code (the "Bankruptcy Code"). [ECF Adv. Doc. 1 (the "Complaint" or "Compl.") at ¶ 14; ECF Doc. 1].[2] On November 12, 2019, the Debtor filed its Plan of Liquidation, which was confirmed by Order of the Bankruptcy Court dated March 18, 2020. [Compl. at ¶ 15; ECF Docs. 308 (the "Plan" or "Liquidation Plan") and 435 (the "Confirmation Order")].[3] The Liquidation Plan specifically provides as follows:

> The Plan Administrator shall be deemed the representative of the Estate in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and all of the Estate's Assets shall vest with the Plan Administrator for purposes of carrying out the provisions of this Plan.

[Liquidation Plan at ¶ 8.1.1].

> The Plan Administrator is empowered, in his sole discretion . . . to: . . . iii. control the liquidation and/or disposition of all remaining Assets after confirmation of the Plan and reduce such assets to Cash or to abandon any such Assets, in the exercise of its reasonable discretion. . . .; . . . v. commence or continue Recovery Actions for the purpose of liquidating the Assets of the Estate or maximizing the value of the Estate; . . . [and] xvi. in its sole discretion, settle, compromise, litigate to a final judgment, or abandon any Cause of Action . . . .;

[Liquidation Plan at ¶ 8.1.2].

---

[2] As noted by Defendants in their Brief, at the motion to dismiss stage, a court may take judicial notice of the docket entries in a case and the contents of bankruptcy filings to determine the timing and status of case events as well as facts not reasonably in dispute. *In re Trichilo*, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015); *see also Pellegrino v. Great Atlantic & Pacific Tea Co., Inc.,* 2013 WL 5773278, *2 (D.N.J. Oct. 24, 2013) (taking judicial notice of Chapter 11 Plan and terms without converting the motion to dismiss to one for summary judgment, as the Plan is a matter of public record).

[3] The Confirmation Order included certain modifications to the Plan, however, none of such modifications pertain to the Liquidation Plan provisions applicable and cited herein.

6

> (a) As of the Effective Date, title to the property of the Estate shall vest and/or re-vest in the Plan Administrator subject to the Plan Administrator's obligation to administer, liquidate and distribute the property in accordance with the terms of this Plan.

[Liquidation Plan at ¶ 13.1].

> The Plan Administrator shall retain the exclusive right to enforce any and all Recovery Actions against any person or entity. The Plan Administrator may pursue, abandon, or release any or all Recovery Actions as it deems appropriate . . . .

[Liquidation Plan at ¶ 13.5].

> Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Plan Administrator retains the right to . . . all of the Recovery Actions, including without limitation: . . . (3) any and all claims and Causes of Action that the Debtor held pre-confirmation . . . .
>
> Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Plan Administrator . . . .

[Liquidation Plan at ¶ 13.7].

> Except as otherwise provided in the Plan or the Confirmation Order, the Plan Administrator, in accordance with section 1123(b) of the Bankruptcy Code, shall retain and shall have the exclusive right to prosecute and enforce any cause of action or rights to payment of claims that the Debtor or its bankruptcy Estate may hold against any person.

[Liquidation Plan at ¶ 14.5].

The Liquidation Plan defines Estate, Assets, Recovery Actions, and Causes of Action as follows: (i) "Estate" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon commencement of the Bankruptcy Case; (ii) "Assets" means all the assets of the Estate, whether or not reflected in the financial records of the Debtor; (iii) "Recovery Actions" means, collectively and individually, without limitation, . . . Claims and Causes of Action under . . .

applicable bankruptcy and non-bankruptcy law; and (iv) "Causes of Action" means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies . . . and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date.  [Liquidation Plan at ¶¶ 1.35, 1.6, 1.52, and 1.14].

Accordingly, under the confirmed Liquidation Plan, the Creditors Trust here was created pursuant to Section 1123 of the Bankruptcy Code, with the Plan Administrator for the Creditors Trust deemed the representative of and successor to Debtor's Estate in accordance with Section 1123 of the Bankruptcy Code and having the right, power, and authority to, among other things, pursue, litigate, liquidate, and/or dispose of the Assets, Recovery Actions, and Causes of Action of the Debtor and its Estate, for the benefit of Debtor's creditors.  The Plan Administrator for the Creditors Trust is acting on behalf of a debtor-in-possession, the Debtor, as successor to and representative of its Estate, and is pursuing the legal malpractice/professional negligence claims against Defendants, which constitute Assets, Causes of Action, and Recovery Actions of the Estate under the confirmed Liquidation Plan, that belonged to the Debtor, and which vested in the Plan Administrator for the Creditors Trust, for the benefit of the Debtor's creditors.

The Complaint likewise adequately alleges such: (i) "The Plaintiff, ROBERT S. BERNSTEIN . . . in his capacity as Plan Administrator for the Creditors Trust under the confirmed Plan . . ., as successor to the estate of the Debtor, 5171 Campbells Land Co., Inc.  . . . files this Complaint for Damages and Demand for Jury Trial  . . . against MEYER, UNKOVIC & SCOTT LLP . . . and ROBERT E. DAUER, JR. . . . ." [Compl. at p. 1]; and (ii) "Pursuant to the confirmed Plan and Creditors Trust formed thereunder, the Plan Administrator is the duly appointed,

qualified, and acting fiduciary in the Bankruptcy Case and has the authority and standing to commence this adversary proceeding and to prosecute all causes of action asserted herein on behalf of the Company and Bankruptcy Estate." [Compl. at ¶ 16].

The Complaint is further replete with allegations that the legal malpractice/professional negligence claims against Defendants are brought on behalf of the Debtor for damages to the Debtor. [*See, e.g.,* Compl. at ¶¶ 1, 2, 5, 7, 8, 9, 48, 50, 56, 58, 59, 61, 64, 65, 72, 73, 91, 93, 102, 107, 114 (emphasis added)];[4] [*See also* Compl. at ¶¶ 67, 68, 103, 105, 106, 110-112].

---

[4] (i) "This is an action against Defendants . . . **legal counsel to 5171 Campbells**, for professional negligence/legal malpractice, arising from the direct role that the Defendants played in regard to the **Company's demise as a result of their acts and omissions** described herein;" (ii) "**Meyer Unkovic and Dauer represented 5171 Campbells** . . .;" (iii) "**Meyer Unkovic and Dauer provided wholly inadequate and conflicted legal advice and consultation to the Company . . . to the detriment of 5171 Campbells**;" (iv) "Meyer Unkovic and Dauer **failed to fully, properly, and timely provide bankruptcy and insolvency advice to the Company including before its most valuable asset, the Company's interest in the Perkins License Agreements, was terminated by Perkins in June of 2018** . . .;" (v) "Meyer Unkovic and Dauer acted in a manner reflecting undivided loyalties to . . .Kane individually, President of the Company, *instead of to 5171 Campbells, the client*;" (vi) "**As a result of the acts and omissions of Defendants** . . . **5171 Campbells suffered significant damages . . . and Plaintiff, as the Plan Administrator on behalf of the bankruptcy estate, brings this action to recover those damages**;" (vii) "The APA had multiple material legal deficiencies and risks that **Dauer and Meyer Unkovic failed to fully, properly, and timely discuss or explain to 5171 Campbells, which could, and ultimately did, materially impact 5171 Campbells . . . to the severe detriment of 5171 Campbells**;" (viii) "Dauer and Meyer Unkovic **failed to fully, properly, and timely advise 5171 Campbells** of the risks associated with the lack of a financing contingency in the APA . . . *to the extreme detriment of 5171 Campbells*;" (ix) "Dauer and Meyer Unkovic **failed to fully, properly, and timely advise 5171 Campbells** of the material terms and financial obligations and risks under the APA, including the assumed liabilities and amounts thereof . . . *to the extreme detriment of 5171 Campbells*;" (x) "Dauer and Meyer Unkovic likewise **failed to fully, properly, and timely advise 5171 Campbells** of the importance and necessity of an adequate due diligence process and period in connection with the Perkins Franchise Transaction, and the material risks associated with a lack of same;" (xi) "Dauer and Meyer Unkovic **failed to fully, properly, and timely advise 5171 Campbells** with respect to the inspection rights which were afforded;" (xii) "Dauer and Meyer Unkovic **failed to fully, properly, and timely advise 5171 Campbells** of the material terms and risks of that certain $1,750,000 bridge loan from Store Capital . . .; (xiii) Dauer and Meyer Unkovic **failed to fully, properly, and timely advise 5171 Campbells** of the material terms, obligations, and risks associated with the Perkins License Agreements – the material risk that 5171 Campbells would be incapable of fully, properly, and timely performing its contractual duties and financial obligations thereunder given the material terms, uncertainties, and risks associated with the APA and Store Capital Transactions as described above – which is exactly what occurred;" (xiv) "**In sum, as a direct result of Dauer and Meyer Unkovic's wholly inadequate and conflicted legal advice and consultation to the Company in connection with the Perkins Franchise Transaction . . . 5171 Campbells was completely incapable of making reasonably informed business decisions** . . . and was completely incapable of fully, properly, and timely performing its contractual duties and financial obligations under the material

9

Defendants cite to only one case which involves whether Section 108 applies to actions brought by a Chapter 11 liquidating trustee, and that case supports that the Plan Administrator, as successor to and representative of Debtor's Estate, is entitled to the benefit of Section 108 in connection with the legal malpractice/professional negligence claims against Defendants, which belonged to and are brought on behalf of the Debtor. Defendants, based on their faulty and incorrect argument that the Plan Administrator is asserting assigned and/or creditor claims, cite to *Sender v. Mann*, 423 F. Supp. 2d 1155, 1166 (D. Colo. 2006) for the proposition that "because the creditors' claims were assigned after the date of the bankruptcy petition, the extended statute of limitations did not apply to those claims." [Brief at p. 12]. Further review and analysis of *Sender*, however, reveals that the *Sender* Court made the critical and material distinction for Section 108 purposes between claims being brought by the liquidating trustee in the shoes of the debtor and claims being brought in the shoes of creditors and concluded that (i) the liquidating trustee's legal

---

agreements comprising the Perkins Franchise Transaction . . . ***to the severe detriment of 5171 Campbells***;" (xv) "Notwithstanding the critical nature of the Perkins License Agreements, ***Dauer and Meyer Unkovic failed to provide any legal advice or consultation, let alone proper advice, of 5171 Campbells' options to prevent termination of the Perkins License Agreements . . . .;"*** (xvi) "***As a direct result of Dauer and Meyer Unkovic's non-existent legal advice and consultation to 5171 Campbells . . . 5171 Campbells' Perkins License Agreements terminated***;" (xvii) "***As a direct result of Dauer and Meyer Unkovic's wholly inadequate and flawed legal advice and consultation to the Company . . . 5171 Campbells was completely incapable of making reasonably informed business decisions*** . . . and was completely incapable of fully, properly, and timely performing its contractual duties and financial obligations under the material agreements comprising the Perkins Franchise Transaction . . . ***to the severe detriment of 5171 Campbells***.;" (xviii) "***Dauer and Meyer Unkovic failed to fully, properly, and timely advise 5171 Campbells of its duties and obligations as an insolvent company and failed to provide full, proper, and timely insolvency legal advice to maximize value to the Company;***" (xix) ***As a direct and proximate result of the acts and omissions committed by Defendants . . . alleged herein, 5171 Campbells has suffered damages*** that include . . . increased liabilities of the Company in excess of $30 million, . . . the loss and depletion of valuable assets of the Company, including . . . the loss of the Perkins License Agreements; the decrease in the asset values and enterprise value of the Company, including . . . the loss of the Perkins License Agreements; and (xx) "***The failures of Dauer and Meyer Unkovic to exercise ordinary skill and knowledge was the proximate cause of substantial damages to 5171 Campbells in excess of $30 million . . .***"

10

malpractice and other claims, brought on behalf of the debtor, were timely under Section 108,[5] and therefore, the defendants' statute of limitations defense for those actions failed as a matter of law; and (ii) because the creditors' claims were assigned to the liquidating trustee after the date of the bankruptcy petition, the extended statute of limitations did not apply to those claims, as Section 108 only extends the filing period for claims that could have been brought by the debtor. *Sender*, 423 F. Supp. 2d at 1165-1166.

Defendants do not cite to a single case where Section 108 was found to be inapplicable to extend the statute of limitations in the context of a Chapter 11 post-confirmation representative of a bankruptcy estate, such as liquidating trustees, plan administrators, and disbursing agents, asserting claims of and damages to the Debtor, which existed as of the bankruptcy petition date, for the benefit of the estate and its creditors. Nor has the Plan Administrator found one.

Instead, the remaining Section 108 cases cited by Defendants are wholly inapplicable, with many likewise based on the faulty position by Defendants that the Plan Administrator is asserting assigned and/or creditor claims. *See In re McConnell*, 390 B.R. 170, 179-182 (Bankr. W.D. Pa. 2008)(finding that Section 108 applies to chapter 13 debtor pursuing claims on behalf of the estate and denying motion to dismiss as it relates to statute of limitations, and citing one case for the proposition that a creditor is not conferred such tolling power); *Straub v. Richardson*, 92 So. 3d 548, 551 (La. App. 1 Cir. 5/2/12)(declining to apply Section 108 to chapter 13 debtor but noting split among bankruptcy courts in the chapter 13 debtor context); *U.S. For Use of American Bank v. C.I.T. Const. Inc. of Texas,* 944 F.2d 253, 259-260 (5th Cir. (Tex.) 1991)(finding that Section 108 does not apply to a creditor independently pursuing a claim solely to advantage itself, not to benefit the estate and all creditors, with any recovery by creditor in the suit to vest solely in

---

[5] The Court reached this conclusion after considering the liquidating trustee's assertion that Section 108 applied and that defendants did not provide a factual basis to question such assertions.

11

creditor);[6] *WRS, Inc. v. Plaza Ent., Inc.,* 402 F.3d 424, 430, n. 5 (3d Cir. 2005)(dismissing appeal and remanding case related to order administratively closing case and dismissal of cause of action, and citing *C.I.T.* solely for the proposition that on remand the court may wish to consider the policy underlying 11 U.S.C. § 108, which gives debtors a two-year extension within which to commence an action on a pre-petition claim, which courts have construed as designed to provide extra time "'to investigate and pursue collection of claims for the benefit of the estate.'"); *Motor Carrier Audit & Collection Co., a Div. of Delta Traffic Serv. v. Lighting Prod., Inc.,* 113 B.R. 424 (N.D. Ill. 1989)(in context of alleged transferee of Chapter 7 debtor's action, mere assertion in complaint that it was a purchaser and/or assignee of claims of debtor, was inadequate to allege transferee's authority to take advantage of Bankruptcy Code's two-year extension in limitations periods, but concluding that the transferee was the trustee's agent for the purposes set forth in the agreement and that the transferee may invoke the benefits of Section 108, and allowing the filing of an amended complaint incorporating the agreement and the allegations of agency necessary to invoke Section 108);[7] *Roach v. Option One Mortg. Corp.,* 598 F. Supp. 2d 741, 754-757 (E.D. Va.), aff'd, 332 F. App'x 113 (4th Cir. 2009)(in chapter 13 context, finding that when plaintiff voluntarily

---

[6] *C.I.T.* was considered and found to support application of Section 108 by the *Greater Se. Comty. Hosp. Corp.* Court in the context of a Chapter 11 representative of a bankruptcy estate, asserting claims of and damages to the debtor, for the benefit of the estate and its creditors. *See Greater Se. Comty. Hosp. Corp.,* 333 B.R. at 536-538 (analyzing *C.I.T.*, among other cases, and finding that the rule laid out in those cases actually cuts against the position taken by the law firm defendants that the liquidating trust cannot invoke Section 108, as the basic principle underlying all of those decisions is that the protections of Section 108(a) cease to exist only when any recovery by a reorganized debtor or creditor would vest solely in such reorganized debtor or creditor, rather than for the benefit of the estate and all creditors).

[7] *Motor Carrier* was considered and rejected by the *Fishbein* Court in the context of a Chapter 11 representative of a bankruptcy estate, asserting claims of and damages to the debtor, for the benefit of the estate and its creditors. *See Fishbein*, 1992 WL 196768, *3 n. 6 (rejecting defendants' arguments and reliance on *Motor Carrier* because the committee is not an assignee, as defendants contend, but rather, is acting on behalf of the debtor-in-possession, which has the powers and duties of a trustee, and therefore, both because it is standing in the shoes of the debtor in bringing these claims and because it is acting on behalf of or as an agent for the trustee, is entitled to invoke the statutory protections of Section 108).

12

abated her bankruptcy proceedings, any Section 108(a) extension benefitting her bankruptcy estate was extinguished, and because no bankruptcy proceeding was ongoing when plaintiff filed the claim, neither plaintiff, nor any other party, was a "trustee" entitled to commence the claim during any period extended by Section 108(a)); *In re Fiorillo*, 494 B.R. 119, 152 (Bankr. D. Mass. 2013) (in chapter 7 context, because the assignors of certain claims being asserted by the bankruptcy trustees were not debtors, Section 108(a) was inapplicable to those claims); *Lehman Bros. Holdings v. Evergreen Moneysource Mortg. Co.,* 793 F. Supp. 2d 1189, 1192, 1194-1196 (W.D. Wash. 2011)(because Chapter 11 debtor did not receive an assignment of claims until more than one year after debtor commenced litigation and more than two years after debtor filed for bankruptcy, by the time debtor acquired rights to bring an action, more than two years after the bankruptcy filing, the statute of limitations had already expired irrespective of whether the statute of limitations was extended by Section 108(a)(2); in addition, at the time that the Chapter 11 debtor filed bankruptcy, the debtor had no right to sue on the claims because the assignment of claims to Chapter 11 debtor occurred post-suit and post-bankruptcy filing, and the extension of time to file suit provided by Section 108(a)(2) applies only to claims that the debtor could have brought prior to or on the date of the bankruptcy filing).

Because the Plan Administrator for the Creditors Trust is entitled to the benefit of the two year extension of the applicable statute of limitations pursuant to Section 108(a), no statute of limitations defense exists, as the Adversary Proceeding was timely commenced and the Complaint was timely filed within two years of the Petition Date,[8] and the statute of limitations for the claims asserted did not expire prior to the Petition Date. The Petition Date was July 8, 2019, and the Complaint was filed on July 6, 2021, within two years of the Petition Date [ECF Adv. Doc. 1; ECF

---

[8] In a voluntary petition, as in this case, the filing of the petition operates as an order for relief. *Fruehauf*, 250 B.R. at 185 (citing Section 301).

13

Doc. 1], and therefore, the Complaint was timely filed under Section 108. Accordingly, any claims for which the statute of limitations had not expired prior to the Petition Date – July 8, 2019 – are deemed timely filed. *See, e.g., Fruehauf*, 250 B.R. at 185 (citing *Walnut,* 1999 WL 729267, *6).

Here, the statute of limitations for the legal malpractice/professional negligence claims asserted in the Complaint did not expire prior to the Petition Date. Under a two year statute of limitations analysis, all alleged acts and omissions between July 8, 2017 and July 8, 2019 are timely. The Complaint does not allege a single act or omission against Defendants prior to July 8, 2017. [*See generally* Compl.; Compl. at ¶¶ 2-8, 41, 46-47, 52-53, 60, 69-73, 93-96, 100-106, 112]. Thus, no statute of limitations defense exists.

## II. The Plan Administrator Does Not Assert a Claim for Deepening Insolvency and No Basis Exists to Strike Deepening Insolvency Allegations

Contrary to what Defendants assert, the Plan Administrator is not "attempting to state a claim of deepening insolvency indirectly." [Brief at p. 14]. There is a material distinction between a deepening insolvency claim and deepening insolvency damages. Moreover, the Plan Administrator alleges multiple viable damage components – including "(i) increased liabilities of the Company in excess of $30 million . . .; (ii) the loss and depletion of valuable assets of the Company, including . . . the loss of the Perkins License Agreements; (iii) the decrease in the asset values and enterprise value of the Company, including . . . the loss of the Perkins License Agreements; (iv) the increased insolvency of the Company in excess of $30 million . . .; and (v) other damages as may be ascertained though discovery." [Compl. at ¶ 107; *see also* ¶¶ 9, 114].

In *Thabault v. Chait,* 541 F.3d 512 (3d Cir. 2008), in the context of a post-judgment appeal by an auditor in connection with a professional negligence claim, the Third Circuit analyzed, among other things, whether deepening insolvency may be utilized as a measure of damages for a negligence claim. Relying on *In re CitX Corp.*, the auditor sought for the Third Circuit to hold

14

that "whenever a plaintiff makes reference to 'deepening insolvency'. . . as part of its explanation of damages in a negligence action, recovery is not permissible." *Thabault,* 541 F.3d at 520. Rejecting same, the Third Circuit explained as follows:

> *CitX* does not support this proposition. When a plaintiff brings an action for professional negligence and proves that the defendant's negligent conduct was the proximate cause of a corporation's increased liabilities, decreased fair market value, or lost profits, the plaintiff may recover damages in accordance with state law.

*Id.* The *Thabault* Court went on to consider and analyze *Lafferty* and *CitX*, noting that the statements in *Lafferty* were in the context of a deepening insolvency cause of action, and that while the *CitX* Court stated that the deepening of a firm's insolvency is not an independent form of corporate damage, the *CitX* Court further explained that:

> Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation.

*Id.* at 520-521 (citations omitted). "What is important to note at this juncture is that whether deepening insolvency constitutes a valid theory of damages for a harm is a matter that is uniquely subject to state law principles." *Id.* at 521. In *Thabault*, because New Jersey state law controlled, the Third Circuit considered and analyzed same, and being satisfied that New Jersey law provides for a remedy for traditional tort damages that flow from wrongful conduct that results in increased liabilities, decrease in fair asset value and lost profits of a corporation, concluded as follows:

> Accepting [auditor's] invitation to prevent a plaintiff from recovering damages in a negligence action where there has been reference to deepening insolvency, would require us to ignore well-settled New Jersey tort law doctrine, which we are not inclined to do. We hold that traditional damages, stemming from actual harm of a defendant's negligence, do not become invalid merely because they have the effect of increasing a corporation's insolvency.

*Id.* at 520-523.

15

Here, because Pennsylvania state law applies, consideration of whether deepening insolvency constitutes a valid theory of damages under Pennsylvania law is appropriate. While it does not appear that the Pennsylvania Supreme Court has ruled on this issue, in *Ario v. Deloitte & Touche LLP*, 2008 WL 6626953 (Pa. Commw. Ct. June 13, 2008), the Commonwealth Court of Pennsylvania considered the issue,[9] and after extensive analysis, distinguished *CitX*, and denied defendant-auditor's motion for summary judgment based upon *CitX* and the contention that Pennsylvania law does not recognize deepening insolvency damages. *Id.* at *5-7.

> It is beyond cavil that under Pennsylvania law, accountants, as skilled professionals, are to provide services consistent with those of their profession at large. Wooler, 479 A.2d 1032. There is simply nothing in Pennsylvania law that insulates accountants from being sued for negligence in the performance of professional services. Concomitantly, nothing in Pennsylvania law shields accountants from a damage award when the plaintiff prevails on the negligence claim. Damages, which are by definition a pecuniary compensation or indemnity, include all suffered loss, detriment, or injury that occurs through the negligence of another that a plaintiff proves. Deepening insolvency can be both a loss and an injury that occurs through the negligence of another.
>
> Deepening insolvency is an organic theory that reflects the dynamic nature of this global economy. It recognizes the expertise of professionals such as accountants, and, imposes an obligation upon those professionals to perform to the highest standards. And, where there is failure, if pled and proven, the deepening insolvency theory allows for the imposition of liability upon those professionals who through their failure to perform their duties, plunge institutions into financial despair, leaving regulatory agencies and bankruptcy courts to try and put "humpty dumpty" back together again.
>
> This Court concludes that where deepening insolvency damages are sought, if the underlying action is based upon a comp[il]ed financial statement, as in *CitX Corp.*, deepening insolvency damages may not be available. However, where, as in *Allegheny Health*, the accountants have prepared an audited financial statement and the plaintiff has asserted independent causes of action, such as negligence, based upon the compiled financial statement, deepening

---

[9] *Ario* is an unreported panel decision, which may be cited for its persuasive value, but not as binding precedent.

16

> insolvency damages are available. Thus, we conclude that while we do not recognize the deepening insolvency theory as an independent cause of action, if negligence is alleged and proven, the plaintiff may use the deepening insolvency matrix in calculating the damages caused by defendant's negligence.
>
> *Sub judice*, the Liquidator has alleged that Deloitte negligently audited Reliance's financial statements. That alleged negligence caused, among other things, Reliance to pay debts it did not owe, increased Reliance's liabilities, and deflected regulatory scrutiny. Obviously, this Court finds merit in the statement contained on page 25 of the Liquidator's "Memorandum of Law in Opposition to Motion of Defendants Deloitte & Touche LLP and Jan A. Lommele for Partial Summary Judgment" that "deepening insolvency ... is simply the incidental impact of the harm caused by Deloitte's negligence." The Liquidator seeks to recover damages based on independent causes of action in the form of professional negligence, breach of contract, and aiding and abetting a breach of fiduciary duty. Accordingly, Deloitte is not entitled to summary judgment based on *CitX Corp.*

*Id.* at *6-7.

The same analysis applies here. Defendants, as legal counsel to 5171 Campbells, were required to provide services consistent with those of their profession at large and there is simply nothing in Pennsylvania law that shields Defendants from a damage award if and when the Plan Administrator prevails on the negligence claim. Damages, which are by definition a pecuniary compensation or indemnity, include all of 5171 Campbells' suffered loss, detriment, or injury that occurred through the negligence of Defendants that the Plan Administrator proves. Deepening insolvency can be both a loss and an injury incurred by 5171 Campbells through the negligence of Defendants.

The Plan Administrator has alleged that Defendants' negligence caused, among other things, 5171 Campbells' increased liabilities, and deepening insolvency is simply the incidental impact of the harm caused by Defendants' negligence. The Plan Administrator seeks to recover damages based upon the independent cause of action of professional negligence. Thus, there is no

17

basis to strike the Plan Administrator's references to deepening or increased insolvency damages, for which there are only two references in the entire 42-page Complaint [See generally Compl.; Compl. at ¶¶ 9, 107].[10]  This is so even under *CitX*, which while stating that the deepening of a firm's insolvency is not an independent form of corporate damage, further explained that "[w]here an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation." *CitX*, at 520-521.  "When a plaintiff brings an action for professional negligence and proves that the defendant's negligent conduct was the proximate cause of a corporation's increased liabilities, decreased fair market value, or lost profits, the plaintiff may recover damages in accordance with state law," and reference to deepening insolvency does not change this result.  *See Thabault,* 541 F.3d at 520.

### III. The Violation of Ethics Rules Allegations are Proper and No Basis Exists to Dismiss or Strike Such Allegations

The ethical rules governing attorney conduct may be utilized to establish the standard of care in a legal malpractice suit. *Rizzo v. Haines*, 520 Pa. 484, 503-504, 555 A.2d 58, 67-68 (Pa. 1989).  "While an ethics violation is itself not actionable in damages, that same behavior may independently give rise to a cause of action." *Strayer v. Bare*, 2011 WL 13214340 at *1 (M.D. Pa. June 21, 2011)(allowing expert testimony on obligations under Pennsylvania Rules of Professional Conduct)(citing *Maritrans*). The Pennsylvania Rules of Professional Conduct may be used to inform and define a standard of care notwithstanding that such Rules themselves do not create a

---

[10] The standard for striking a portion of a complaint under Rule 12(f) "is strict and ... only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004) (quoting *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672, at *6 (E.D. Pa. Feb. 4, 2004)). Motions to strike are generally disfavored. *Becker*, 2004 WL 228672, at *6.

18

cause of action or civil liability. *Hecht v. Ryan*, 2012 WL 12904141, at *1 (E.D. Pa. Nov. 8, 2012) (denying motion in limine to preclude opinions based on the Pennsylvania Rules of Professional Conduct)(citing *Rizzo*). While an attorney's violations of the Pennsylvania Rules of Professional Conduct do not alone create a cause of action or civil liability, they may be used to inform and define a standard of care. Thus, such allegations are proper and no basis exists to dismiss or strike such allegations.[11]

## IV. Reservation of Rights

Because motions to strike are generally disfavored and the standard for striking a portion of a complaint under Rule 12(f) "is strict and ... only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken,"[12] the Plan Administrator submits that no basis exists to dismiss or strike the Plan Administrator's reservation of rights. Notwithstanding, the Plan Administrator does not object to this sole request to strike by Defendants, as the Plan Administrator agrees that he retains all rights to amend the Complaint in accordance with FRCP 15, made applicable by FRBP 7015, regardless of such reservation of rights in the Complaint.

## CONCLUSION

For the foregoing reasons, the Plan Administrator respectfully submits that the Defendants' Motion should be denied in its entirety. Notwithstanding, the Plan Administrator does not object to the sole request by Defendants to strike the Plan Administrator's reservation of rights, as the Plan Administrator agrees that he retains all rights to amend the Complaint in accordance with FRCP 15, made applicable by FRBP 7015, regardless of such reservation of rights in the Complaint.

---

[11] *See supra* n. 10.
[12] *See supra* n. 10.

19

Respectfully submitted this 18th day of August, 2021.

| | |
|---|---|
| CIMO MAZER MARK PLLC<br>100 S.E. 2nd Street, Suite 3650<br>Miami, FL 33131<br>Tel: (305) 374-6480<br>Cel: (305) 439-3429<br>Fax: (305) 374-6488<br><br>By: /s/ David C. Cimo<br>David C. Cimo, Esq.<br>Fla. Bar No. 775400<br>Email: dcimo@cmmlawgroup.com<br>(admitted *pro hac vice*)<br>Marilee A. Mark, Esq.<br>Fla. Bar No. 725961<br>Email: mmark@cmmlawgroup.com<br>(admitted *pro hac vice*)<br>*Special Litigation Counsel*<br>*to the Plan Administrator* | HERRON BUSINESS LAW<br>607 College Street, Suite 101<br>Pittsburgh, PA 15232<br>Tel: (412) 395-6001<br>Fax: (412) 391-2808<br><br>By: /s/ Matthew M. Herron<br>Matthew M. Herron, Esq.<br>PA. Bar No. 88917<br>Email: mmh@herronbiz.com<br>Nicholas A. Miller, Esq.<br>PA. Bar No. 204141<br>Email: nam@herronbiz.com<br>*Local Counsel to Special Counsel*<br>*to the Plan Administrator* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served on all counsel and parties of record, through the Court's ECF Filing system, on the 18th day of August, 2021, to the following:

Bethann R. Lloyd, Esq.
brl@whc-pc.com
blloyd@d-wlaw.com
Holly M. Whalen, Esq.
hwhalen@d-wlaw.com
Katherine P. Berquist, Esq.
kpb@whc-pc.com
DIBELLA WEINHEIMER
Law & Finance Building
429 Fourth Avenue, Suite 200
Pittsburgh, PA 15219


By: /s/ Matthew M. Herron
Matthew M. Herron, Esq.
PA. Bar No. 88917
Email: mmh@herronbiz.com