**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **In re:** | ) | **Bankruptcy No. 19-22715-CMB** |
|  | ) |  |
| **5171 CAMPBELLS LAND CO., INC.,** | ) | **Chapter 11** |
|  | ) |  |
| **Debtor.** | ) |  |
|  | ) |  |
|  | ) |  |
| **ROBERT S. BERNSTEIN, as Plan** | ) |  |
| **Administrator for the Creditors Trust under the** | ) |  |
| **Debtor's confirmed Plan,** | ) |  |
|  | ) | **Adversary No. 21-2063-CMB** |
| **Plaintiff,** | ) |  |
|  | ) |  |
| v. | ) | **Related to Doc. No. 25** |
|  | ) |  |
| **MEYER, UNKOVIC & SCOTT LLP, a** | ) |  |
| **Pennsylvania Limited Liability General** | ) |  |
| **Partnership, and ROBERT E. DAUER, JR.,** | ) |  |
| **an individual,** | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |
|  | ) |  |

*Appearances*:  Bethann Lloyd, Esq., for Movants/Defendants
            Marilee Mark, Esq., for Respondent/Plaintiff

**<u>MEMORANDUM OPINION</u>**

The matter before this Court is the *Motion to Dismiss* ("Motion," Doc. No. 25)[1] filed by

Meyer, Unkovic & Scott LLP ("Law Firm") and Robert E. Dauer, Jr. (together the "Defendants").

The Defendants seek dismissal of the above-captioned adversary proceeding with prejudice

pursuant to Fed.R.Civ.P. 12(b)(6). Upon consideration of the Motion, the parties' briefs, and the

arguments raised at the hearing held on May 18, 2022, this Court finds the Motion must be denied.

---

[1]      Unless otherwise noted, citations are to filings docketed in Adversary Proceeding No. 21-2063.

Background and Procedural History

On July 8, 2019, 5171 Campbells Land Co., Inc., (hereinafter "Campbells Land" or "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A Committee of Unsecured Creditors (the "Committee") was appointed. Thereafter, the Debtor and Committee proposed the *Debtor's Chapter 11 Plan of Liquidation Dated November 12, 2019* (the "Plan," Case No. 19-22715, Doc. No. 308). By Order dated March 18, 2020, the Court confirmed the Plan. *See* Case No. 19-22715, Doc. No. 435.

Pursuant to the Plan, Robert S. Bernstein, Esq., was appointed as Plan Administrator to conduct an orderly liquidation of the Debtor's assets, including the prosecution of Estate Litigation. [2] *See* Plan at 1 and §8.1. The Plan provides as follows:

> The Assets of the Estate will vest or re-vest in the Plan Administrator pursuant to Section 13.1 of the Plan and will be liquidated by the Plan Administrator. The Plan will be funded by proceeds of the Estate Litigation and the sale of the Real Property. The assets of the Estate, including the proceeds from the sale of the Real Property, the Settlement Proceeds, and the proceeds of the Estate Litigation will make up the Creditors Trust and be distributed to creditors holding Allowed Claims.

*See* Plan §8.1. The role of the Plan Administrator is further delineated in the Plan as follows:

> The Plan Administrator shall be deemed the representative of the Estate in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and all of the Estate's Assets shall vest with the Plan Administrator for purposes of carrying out the provisions of this Plan.

*See* Plan §8.1.1. Following confirmation, the Plan Administrator commenced a number of adversary proceedings pursuant to his role under the confirmed Plan.

---

[2]     Estate Litigation is broadly defined in the Plan as "all claims, Causes of Action and Recovery Actions of the Estate against third parties, including but not limited to, claims and causes of action against the Debtor's shareholders and/or investors and/or any litigation or claims instituted or asserted by the Plan Administrator prior to the Effective Date or which may be brought on behalf of the Debtor by the Plan Administrator to recover causes of action, preferences, fraudulent conveyances or avoidance actions of any kind whatsoever." *See* Plan §1.36.

On July 6, 2021, the Plan Administrator filed the *Complaint for Damages and Demand for Jury Trial* ("Complaint") commencing this adversary proceeding. Within the Complaint, the Plan Administrator alleges that Defendants committed professional negligence and legal malpractice as legal counsel to Campbells Land prior to the filing of the bankruptcy case. Specifically, Count I alleges legal malpractice/professional negligence, carelessness, and recklessness against both Defendants, and Count II asserts a claim of vicarious liability against the Law Firm. Defendants sought immediate withdrawal of the reference asserting the proceeding is non-core and may ultimately require a jury trial before the District Court. While the request for withdrawal of the reference was pending, Defendants also filed the instant Motion seeking dismissal of the Complaint. By Memorandum Opinion and Order entered January 28, 2022, the District Court denied the request for immediate withdrawal of the reference without prejudice to Defendants reasserting such a request at a later date. *See* Civ. No. 1:21-cv-216, Doc. Nos. 12 (hereinafter, "District Court Opinion") and 13. At the same time, the District Court determined that the reference would be withdrawn for the purpose of trial. *See id.* Therefore, this Court will preside over the pretrial aspects of this adversary proceeding, including the presently pending Motion, until the reference is withdrawn.

The Motion was filed on August 6, 2021, with the *Brief in Support of Motion to Dismiss* ("Brief in Support," Doc. No. 26). The Plan Administrator filed *Plaintiff's Response Brief in Opposition to Defendants' Motion to Dismiss and Brief* ("Brief in Opposition," Doc. No. 30), and Defendants filed a *Reply Brief in Support of Motion to Dismiss* ("Reply Brief," Doc. No. 32). Following the decision of the District Court, this Court held a status conference on March 18, 2022, to address the pending Motion and how the parties intended to proceed. In addition to their briefs, the parties' positions were further clarified in their Joint Status Report and Supplemental

Joint Status Report. *See* Doc. Nos. 37 and 47. The Court heard oral argument on May 18, 2022

("Oral Argument"), and the matter is ripe for decision.

## Jurisdiction

As determined by the District Court, this adversary proceeding is non-core;[3] therefore, this

Court exercises "related to" jurisdiction pursuant to 28 U.S.C. §§157 and 1334. As provided in 28

U.S.C. §157(c)(1), a bankruptcy judge may hear a non-core proceeding; however, any final order

or judgment is entered by the District Court upon review of the bankruptcy judge's proposed

findings of fact and conclusions of law.[4] Notwithstanding this limitation, it has been held that

bankruptcy courts have the power to enter an order on a motion to dismiss even in a non-core

proceeding. *See Am. Media Inc. v. Anderson Mgmt. Servs., Inc.* (*In re Anderson News, LLC*), No.

15-199-LPS, 2018 WL 2337132, 2018 U.S. Dist. LEXIS 86436 (D.Del. May 23, 2018); *Allied*

*Dev. of Alabama LLC v. Forever 21, Inc.* (*In re Forever 21, Inc.*), 623 B.R. 53, 57 (Bankr.D.Del.

2020). Should the District Court determine that this Court lacks authority to enter an order

resolving the Motion, this Memorandum Opinion and accompanying Order shall constitute this

Court's recommendation to the District Court.

## Legal Standard

The Defendants seek dismissal of this case with prejudice pursuant to Fed.R.Civ.P.

12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012, for failure to state a

claim upon which relief can be granted. As the rule tests the sufficiency of a complaint, the Court

must determine if the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a

---

[3]      *See* District Court Opinion at 4 ("As a preliminary matter, the Court concludes -- and the parties agree -- that the Adversary Proceeding involves a non-core proceeding.").

[4]      It is not anticipated that this Court will draft proposed findings of fact at any point in this proceeding. This Court's role is limited to presiding over pretrial matters until the case is ready for trial before the District Court unless the reference is withdrawn prior to that time. *See* District Court Opinion.

claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). Within this Circuit, a statute of limitations defense may be raised in a

motion under Rule 12(b)(6) if the bar is apparent on the face of the complaint. *See Fried v. JP

Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017). When deciding a motion to dismiss, in

addition to the allegations contained within the complaint, exhibits attached thereto, and matters

of public record, a court may consider a document that is integral to the complaint or explicitly

relied upon therein. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Factual Allegations

As set forth in the Complaint, the Plan Administrator commenced the adversary proceeding

pursuant to his authority under the confirmed Plan to prosecute causes of action on behalf of the

Debtor and the bankruptcy estate.[5] The Plan Administrator alleges that the Defendants, as legal

counsel to Campbells Land, played a direct role in the company's demise. *See* Complaint at ¶1.

Campbells Land was formed as a land-holding investment/commercial development company in

June 2012. *Id.* at ¶2. From around that time, Defendants represented Campbells Land as its primary

outside legal counsel on a variety of matters, including complex corporate, transactional, litigation,

and bankruptcy/insolvency matters. *See id.*

For a period of eighteen months prior to the commencement of this bankruptcy case,

Campbells Land operated twenty-seven restaurants (the "Perkins Franchise Chain") pursuant to

---

[5]      *See* Complaint at ¶16 ("Pursuant to the confirmed Plan and Creditors Trust formed thereunder, the
Plan Administrator is the duly appointed, qualified, and acting fiduciary in the Bankruptcy Case and has
the authority and standing to commence this adversary proceeding and to prosecute all causes of action
asserted…on behalf of the [Debtor] and Bankruptcy Estate.").

license agreements with Perkins & Marie Callender's, LLC ("Perkins"). *See id.* at ¶3. In the course of acquiring the Perkins Franchise Chain in January-February 2018, the Defendants represented Campbells Land in the purchase of assets and assumption of liabilities from a Chapter 11 debtor as well as several other related transactions, including the purchase of real estate, a sale leaseback transaction, and financing transactions (the "Perkins Franchise Transaction"). *See id.* at ¶4.

The Plan Administrator contends that the Defendants provided inadequate and conflicted legal advice and consultation to Campbells Land before, during, and after the closing of the Perkins Franchise Transaction. *See id.* at ¶5. Within weeks of the closing of the Perkins Franchise Transaction, Campbells Land was in default in its contractual obligations. *See id.* The Plan Administrator asserts that Defendants failed to fully, properly, and timely advise Campbells Land of all the material aspects, terms, and risks of the Perkins Franchise Transaction resulting in the inability of Campbells Land to make reasonably informed business decisions and perform its contractual duties and financial obligations. *See id.* Because of the Defendants' acts and omissions, Campbells Land purchased a business it could not afford to operate and entered into agreements it had no ability to perform. *See id.* at ¶6.

Despite the company's insolvency from the time of the Perkins Franchise Transaction until its July 2019 bankruptcy filing, Defendants failed to provide Campbells Land with full and timely bankruptcy and insolvency advice before the loss of its most valuable asset, its interest in license agreements with Perkins. *See id.* at ¶7. As a result, any prospect of a successful reorganization was doomed. *See id.* The Plan Administrator contends that, due to Defendants' acts and omissions, the Debtor suffered significant damages, including depletion of assets, deepening insolvency, and increased liabilities in excess of $30 million. *See id.* at ¶9. Pursuant to the confirmed Plan, the Plan Administrator seeks to recover these damages. *Id.* at ¶¶9 and 16.

<u>Analysis</u>

Within the Motion, Defendants contend that (1) the action is time-barred; (2) the

allegations of deepening insolvency do not state a viable claim; (3) the alleged violation of ethics

rules is not a basis for liability; and (4) the Plan Administrator's reservation of rights to assert

additional claims is improper.[6] In an effort to narrow the issues, the Plan Administrator agreed to

strike the reservation of rights and resolve the fourth identified issue without the need for resolution

by the Court. *See* Doc. No. 47 at ¶1. With respect to the second and third issues, the Court's Order

dated May 3, 2022 ("May 3rd Order"), sought clarification as to the relief requested:

> Defendants argue that allegations of deepening insolvency and violations of Rules
> of Professional Conduct should be <u>*stricken*</u> from the Complaint. Defendants,
> however, include these among the grounds for <u>*dismissal*</u> of the Complaint.
> Defendants shall be prepared to explain the applicable rule in support of striking
> the allegations and, to the extent the allegations should be stricken, how that would
> result in dismissal of the Complaint.

*See* Doc. No. 40 at ¶3. Defendants provided some clarification in the Supplemental Joint Status

Report. Therein, Defendants agree that only the argument based on the statute of limitations could

be fully dispositive while the other challenges raised would not result in dismissal of this adversary

proceeding. *See* Doc. No. 47 at ¶3. At Oral Argument, Defendants sought dismissal of the

Complaint as time-barred and further argued that elimination of certain portions of the Plan

---

[6]     In their Reply Brief, Defendants appear to raise another argument by asserting that the Plan does
not provide the Plan Administrator with the right to commence this action in the first place. *See* Reply Brief
at 5. However, the language of the Plan broadly reserves causes of action for adjudication by the Plan
Administrator. *See* Plan §13.7 ("Unless a claim or Cause of Action against a creditor or other entity is
expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor
expressly reserves such claim or Cause of Action for later adjudication by the Plan Administrator….") and
§14.5 ("Except as otherwise provided in the Plan or the Confirmation Order, the Plan Administrator, in
accordance with section 1123(b) of the Bankruptcy Code, shall retain and shall have the exclusive right to
prosecute and enforce any cause of action or rights to payment of claims that the Debtor or its bankruptcy
Estate may hold against any person."). Notably, at the time the bankruptcy case was commenced, Debtor
was "investigating claims against…past professionals…." *See* Attached Statement to Schedule A/B, Case
No. 19-22715, Doc. No. 122 (identifying causes of action against third parties). Therefore, the Court finds
this argument to be without merit.

Administrator's Complaint referencing deepening insolvency and ethics rules is otherwise

appropriate. The Court begins with the only potentially dispositive issue.

Statute of Limitations

According to Defendants, because the alleged conduct at issue occurred prior to June 2019,

the filing of this action on July 6, 2021, is time-barred based on the two-year statute of limitations

under applicable Pennsylvania law. In response, the Plan Administrator contends that the action is

nonetheless timely due to the extension provided by 11 U.S.C. §108(a). That section provides as

follows:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy
> proceeding, or an agreement fixes a period within which the debtor may commence
> an action, and such period has not expired before the date of the filing of the
> petition, the *trustee* may commence such action only before the later of--
>> (1) the end of such period, including any suspension of such period
>> occurring on or after the commencement of the case; or
>> (2) two years after the order for relief.

*See* 11 U.S.C. §108(a) (emphasis added). Defendants do not contend that the statute of limitations

expired prior to the filing of this bankruptcy case on July 8, 2019; rather, the parties dispute

whether the reference to only the trustee in the text of §108(a) precludes the Plan Administrator

from invoking the statute as a basis for extension of time to pursue this action.

Defendants contend that the plain language of the statute provides an extension only to a

*trustee*, an argument which appears compelling upon initial review of *Hartford Underwriters*

*Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000). In *Hartford*, the Supreme Court

considered whether an administrative claimant is a proper party to seek recovery under 11 U.S.C.

§506(c), where the language of the applicable statute provided that "[t]he trustee may recover"

costs and expenses of preserving property. *See id.* at 5-6. In commencing its analysis, the Court

set forth the following principles:

> [W]e begin with the understanding that Congress "says in a statute what it means
> and means in a statute what it says there[.]" As we have previously noted in
> construing another provision of §506, when "the statute's language is plain, 'the
> sole function of the courts'"—at least where the disposition required by the text is
> not absurd—"'is to enforce it according to its terms.'" Here, the statute appears
> quite plain in specifying who may use § 506(c) – "[t]he trustee." It is true, however,
> …that all this actually "says" is that the trustee may seek recovery under the section,
> not that others may not. The question thus becomes whether it is a proper inference
> that the trustee is the only party empowered to invoke the provision. We have little
> difficulty answering yes.

*Id.* ta 6 (internal citations and footnote omitted). In light of this analysis, this Court must consider

whether the same language in §108(a), providing "the trustee may," should be construed to limit

its application only to a trustee.

There are, however, certain distinctions that must be noted between the facts and issues in

*Hartford* and the matter presently before this Court.[7] In *Hartford*, the party attempting to proceed

under §506(c) was an administrative claimant seeking payment of its claim following the

conversion of the case to Chapter 7. Upon conversion to Chapter 7, a trustee was appointed. When

concluding that "the trustee is the only party empowered to invoke the provision," it is clear the

conclusion was stated specifically in the context of a Chapter 7 case. *See id.* at 6 & n.3. This is

evident as the Supreme Court noted that debtors-in-possession in Chapter 11 cases may also use

the section, despite the reference only to the trustee, as they have the powers of a trustee pursuant

to 11 U.S.C. §1107. *See id.* at 6 n.3.

Likewise, in this Chapter 11 case, Defendants acknowledge that §1107(a) has been

interpreted to provide the rights under §108(a) to a debtor-in-possession. *See* Brief in Support at

9. Specifically, §1107(a) provides that "a debtor in possession shall have all the rights…and

---

[7]    *See Antioch Litig. Trust v. McDermott Will & Emery LLP*, 500 B.R. 755, 762 n.11 (S.D. Ohio
2013)(finding *Hartford* distinguishable and not controlling as the Court was not presented with the question
of whether a representative of the estate pursuant to §1123(b)(3)(B) could assert a claim and further did not
address §108(a)).

powers, and shall perform all the functions and duties…of a trustee serving in a case under this chapter." Nonetheless, Defendants contend that the Plan Administrator is not entitled to the extension as it is neither a trustee nor a debtor-in-possession. *See* Brief in Support at 10. Further analysis of the Plan Administrator's role is appropriate and helpful to address Defendants' contention.

Notably, in *Hartford*, the party attempting to proceed under §506(c) was an administrative claimant seeking payment of its own claim. In discussing the support for the conclusion that only the trustee may seek recovery under the section, the Supreme Court observed, "the fact that the sole party named – the trustee – has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others." 530 U.S. at 7.[8] A trustee's role is explicitly set forth in the Code: "The trustee in a case under this title is the representative of the estate." *See* 11 U.S.C. §323(a). As recognized by the Supreme Court in *Hartford*, debtors-in-possession in Chapter 11 cases have the powers of a trustee. Pursuant to the Code in the Chapter 11 context, yet another entity may fulfill the role of representative of the estate, where a plan provides for

> (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
> (B) the retention and enforcement by the debtor, by the trustee, or by *a representative of the estate appointed for such purpose*, of any such claim or interest[.]

---

[8]    While addressing the impact of *Hartford* on derivative suits, the Third Circuit observed the distinction between Chapter 7 and Chapter 11 cases, recognizing that "[w]hile…the trustee serves a 'unique role' in Chapter 7, nothing could be further from the truth in Chapter 11, where trustees rarely exist." *Official Comm. of Unsecured Creditors v. Chinery*, 330 F.3d 548, 560 (3d Cir. 2003). *See also Ctr. for Advanced Mfg. & Tech. v. Wrightco Techs., Inc.* (*In re Ctr. for Advanced Mfg. & Tech.*), 331 B.R. 649 (Bankr.W.D.Pa. 2005)(finding that *Hartford* was not an impediment to an action brought by a debtor post-confirmation in a Chapter 11 case where certain causes of action were retained under the plan pursuant to §1123(b)(3)(B)).

*See* 11 U.S.C. §1123(b)(3)(emphasis added).[9] By way of the confirmed Plan, the Plan

Administrator became a representative of the estate for the retention and enforcement of claims

belonging to the debtor or the estate, and the confirmed Plan provides the Plan Administrator with

"the powers of a trustee." *See* Plan §8.1.1.[10]

Nonetheless, Defendants seem to argue that no estate exists post-confirmation for the Plan

Administrator to have the status as "representative of the estate." *See* Reply Brief at 4. The

conclusion that the estate is dissolved upon confirmation is rooted in §1141(b), which states

"*[e]xcept as otherwise provided in the plan or the order confirming the plan*, the confirmation of

a plan vests all of the property of the estate in the debtor." (Emphasis added.) In this case, the Plan

provides:

> The Plan Administrator shall be deemed the representative of the Estate in
> accordance with section 1123 of the Bankruptcy Code and shall have all powers,
> authority, and responsibilities specified in the Plan, including, without limitation,
> the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and
> all of the Estate's Assets shall vest with the Plan Administrator for purposes of
> carrying out the provisions of this Plan.

---

[9]   *See Antioch*, 500 B.R. at 763 (finding the trust created pursuant to §1123(b)(3)(B) was successor
to the debtor-in-possession and stood in the shoes of the debtor-in-possession).
[10]   In *Hartford*, the administrative claimant also argued that 11 U.S.C. §1109, providing a "party in
interest" the ability to raise and be heard on any issue, supported the right of a nontrustee to recover under
§506(c). *See* 530 U.S. at 8. The Supreme Court rejected this argument as well:

> In any event, we do not read § 1109(b)'s general provision of a right to be heard as broadly
> allowing a creditor to pursue substantive remedies that other Code provisions make
> available only to other specific parties. *Cf.* 7 L. King, Collier on Bankruptcy & ¶ 1109.05
> (rev. 15th ed. 1999) ("In general, section 1109 does not bestow any right to usurp the
> trustee's role as representative of the estate with respect to the initiation of certain types of
> litigation that belong exclusively to the estate").

*See id.* 8-9. Here, however, the Plan Administrator is acting as the representative of the estate pursuant to
§1123. Further, the Supreme Court did not decide in *Hartford* whether a bankruptcy court can allow other
parties to act in the trustee's stead. *See id.* at 13 n.5. In addition, the conclusion that a representative of the
estate pursuant to §1123(b)(3) may proceed under a statute providing "the trustee may" take certain action
has been reached with respect to other provisions of the Code. *See UMB Bank, N.A. v. Sun Capital Partners
V, LP (In re LSC Wind Down, LLC)*, 610 B.R. 779, 784 (Bankr.D.Del. 2020) ("Section 544(b)(1) serves as
a 'vehicle' through which a trustee appointed under the Bankruptcy Code or, in the absence of such a
trustee, a debtor-in-possession or estate representative may, among other things, recover fraudulently
transferred assets of a debtor under a state's fraudulent conveyance laws."). In this case, by way of the
confirmed Plan, the Plan Administrator was permitted to act in the role of a trustee.

*See* Plan §8.1.1. Defendants' reading of §1141(b) appears to render §1123(b)(3)(B) a nullity. To the contrary, §1123(b)(3)(B) allows for language to be included in a plan to provide for the retention and enforcement of claims. *See O.E.M./Erie, Inc. v. McCallum (In re O.E.M./Erie, Inc.)*, 405 B.R. 779, 783 n.4 (Bankr.W.D.Pa. 2009). In this case, the proceeds of the Estate Litigation are a component of Plan funding to be pursued by the Plan Administrator. *See* Plan §8.1. It is nonsensical to conclude that the power to pursue the claims "disappeared into the ether" based on the selection of an estate representative as the agent to enforce claims under §1123(b)(3)(B) as opposed to the debtor or a trustee. *See Antioch Litig. Trust v. McDermott Will & Emery LLP*, 500 B.R. 755, 762 (S.D. Ohio 2013)(quoting *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, 333 B.R. 506, 536 (Bankr.D.D.C. 2005)). Yet, this is exactly the position Defendants take.[11]

This Court finds the language of §108(a) in conjunction with §1123(b)(3)(B) and the confirmed Plan confer the benefit of the extension of time on the Plan Administrator. To the extent Defendants argue otherwise, the contention seems to result from a misapprehension of the Plan Administrator's role. Defendants repeatedly contend that creditors are not conferred the tolling power under §108(a), insinuating that the Plan Administrator is acting in the role of a creditor. *See* Brief in Support at 10 (citing *McConnell v. K-2 Mortgage (In re McConnell)*, 390 B.R. 170 (Bankr.W.D.Pa. 2008)). Despite Defendants' reliance on *McConnell*, the statements in that case do not lend support to their position. Notably, in *McConnell*, the Court disagreed with a proposed interpretation of §108 that would limit its application to only a bankruptcy trustee and refused to read the statute in isolation. *See* 390 B.R. at 179-81. Although the issue in *McConnell* involved whether §108 applied to a pre-petition cause of action prosecuted by a Chapter 13 debtor on behalf

---

[11]    *See* Brief in Support at 9 ("[I]f this case had been initiated by a trustee or the debtor-in-possession, Section 108 would arguably apply to extend the statute of limitations.").

of the bankruptcy estate, the following statement is significant for the purpose of the Plan

Administrator in this case as well: "[T]here is no reason why Section 108 of the Bankruptcy Code

should not also apply to Chapter 13 debtors-in-possession prosecuting estate property, as the

debtor is *the representative of the estate in prosecuting the action*." *See* 390 B.R. at 179-80

(emphasis added). The Court concluded "that the extension of time provisions provided to a trustee

under 11 U.S.C. §108(a) applies to whomever is exercising the trustee's power to sue…." *See id.*

at 180.[12] Here, the Plan Administrator is prosecuting this action pursuant to the powers granted

under the confirmed Plan and, specifically, §1123(b)(3)(B) as "a representative of the estate

appointed for such purpose."

Defendants rely on a number of distinguishable cases in support of their position.

Defendants' reliance on *U.S. for the Use of American Bank v. C.I.T. Construction, Inc.*, 944 F.2d

253 (5th Cir. 1991) is misplaced. In that case, the plaintiff brought suit as successor in interest to

the claims of the debtor after the bankruptcy court granted relief from the automatic stay. *Id.* at

255. In support of the argument for application of §108(a), the plaintiff argued that a creditor's

prosecution of such a claim would *indirectly* benefit the bankruptcy estate by reducing the total

amount of the estate's debt. *See id.* at 259. As observed by the court, the plaintiff was

independently pursuing the claim to further its own interests rather than for the benefit of all the

estate's creditors, and the Court refused to apply §108(a) to extend the limitation period. *See id.* at

---

[12]    Defendants also cite to another case addressing §108 in the context of its potential applicability to a Chapter 13 debtor. *See Roach v. Option One Mortg. Corp.*, 598 F.Supp.2d 741 (E.D.Va. 2009). In that case, the court determined §108 was inapplicable as it "is limited to circumstances where, unlike here, a claim is *both* commenced during pendency of the bankruptcy proceedings *and* commenced by someone acting as the bankruptcy trustee." *Id.* at 755. The question of whether an entity other than a trustee may be acting in the role of a trustee was unanswered, and the court specifically noted that, despite the plain language of §108(a), it is well-settled that a Chapter 11 debtor-in-possession is entitled to the extension. *See id.* at 755 n.23. The court easily concluded the purpose of the extension was not served where the plaintiff voluntarily abated her bankruptcy proceedings. *See id.* at 756.

259-60. Here, the Plan Administrator is not pursuing his own interests but rather is proceeding

pursuant to his role under the confirmed Plan.

In addition, the Plan Administrator is not a mere purchaser or assignee of a Chapter 7

debtor's claim as discussed in *Motor Carrier Audit and Collection Co. v. Lighting Products, Inc.*,

113 B.R. 424, 426 (N.D. Ill. 1989) (holding that "while an agent of the trustee or of the debtor-in-

possession may, on behalf of its principal, invoke §108, there is no precedent for, and it would be

inconsistent with the plain language of the Bankruptcy Code, to allow a mere purchaser or assignee

of a Chapter 7 debtor's claims to take advantage of §108"). Nor is the Plan Administrator pursuing

this action as the assignee of claims held by non-debtor, third parties as discussed in *Goldsmith v.*

*Massad* (*In re Fiorillo*), 494 B.R. 119, 152 (Bankr.D. Mass. 2013) (addressing inapplicability of

§108(a) to bankruptcy trustees' assertion of claims as assignees where the assignors were not

debtors). Rather, the Plan Administrator is pursuing claims held by Debtor at the time the

bankruptcy petition was filed.[13]

As asserted by the Plan Administrator, the facts are more similar to those in *Antioch*

*Litigation Trust v. McDermott Will & Emery LLP*, 500 B.R. 755 (S.D. Ohio 2013). In that case,

the plaintiff trust was created pursuant to §1123(b)(3)(B) as successor to the debtor to pursue

---

[13]     For this reason, the Defendants' reliance on *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F.Supp.2d 1189 (W.D. Wash. 2011), is also misplaced. In that case, the court addressed an entirely different circumstance where the debtor acquired the right to bring an action post-petition after the statute of limitations on the original claim had expired. *See id.* at 1195. The court explained that the extension provided by §108(a) has been limited to claims debtor could have brought prior to or on the date of the bankruptcy petition. *Id.* at 1196. Likewise, in *Sender v. Mann*, 423 F.Supp.2d 1155, 1165-67 (D.Colo. 2006), the court distinguished between two kinds of claims: (1) those asserted by the trustee of the liquidation trust as assets of the debtor and (2) those pursued by the trustee of an opt-in trust to recover funds owed to creditors/noteholders. With respect to the latter category of claims, noteholders, as beneficiaries of the plan created opt-in trust, assigned *their individual claims* to the opt-in trust. *See id.* at 1160. As observed by the court in that case, §108 only extends the filing period for claims that could have been brought by the debtor and did not provide any basis for extension for the claims assigned to the opt-in trust after the bankruptcy case was filed. *See id.* at 1166. As such, these cases cited by Defendants are distinguishable.

claims for the benefit of the debtor's creditors. *See id.* at 763. On those facts, where the trust stood

in the shoes of the debtor and was the estate representative, the trust could invoke the tolling

provision of §108. *See id.* at 763-64. Within the Western District of Pennsylvania, there is also

case law to support the applicability of the extension provided under §108 to a cause of action

brought by a plan administrator. *See O.E.M./Erie,* 405 B.R. at 783 & n.4, 787-88 (where the

confirmed plan provided for the debtor, through the plan administrator, to retain and enforce

certain claims pursuant to §1123(b)(3)(B)). Based on the foregoing, this Court concludes that the

extension provided in §108 applies. This action is timely, and the request to dismiss the Complaint

is denied.

> Allegations of Deepening Insolvency

Having determined that dismissal of the Complaint is not warranted, the Court must now

address the request to eliminate certain portions of the Complaint, beginning with the allegations

relating to insolvency. Defendants contend that, while the claim is not separately stated, the Plan

Administrator "hints at a claim of deepening insolvency." *See* Brief in Support at 13. Defendants

argue that, to the extent such a claim is even viable under applicable Pennsylvania law, such a

claim can only be supported by fraudulent conduct. *See id.* at 14. Without allegations of fraud in

the Complaint, Defendants assert that any averments of deepening insolvency and damages based

on deepening insolvency must be *stricken*. *See id.*

As a preliminary matter, the Plan Administrator clarified that he is not attempting to state

a claim of deepening insolvency; rather, he identifies deepening insolvency damages. *See* Brief in

Opposition at 14. While Defendants challenge whether such references to insolvency should be

included in the alleged damages at all, Defendants acknowledge that a plaintiff who establishes a

malpractice cause of action is entitled to whatever damages flow from that claim. *See* Audio of

Oral Argument at 10:13:47-15:22.[14]

The Defendants' request to strike appears to be directed at three paragraphs within the one-

hundred-nineteen-paragraph Complaint.[15] Defendants have interchangeably characterized their

request regarding the identified portions of the Complaint as a request to strike or dismiss. As

stated in the May 3rd Order, the Court sought clarification regarding the rule relied upon in support

of the request. At Oral Argument, Defendants sought to clarify the matter and indicated that the

request was made pursuant to Fed.R.Civ.P. 12(b)(6). *See* Audio of Oral Argument at 10:09:00-25,

10:33:50-34:57. However, that provision addresses failure to state a claim upon which relief can

be granted and, unlike Fed.R.Civ.P. 12(f),[16] does not appear to provide a basis for striking portions

of a complaint though it permits dismissal of claims within a complaint.[17] Here, the Plan

---

[14]    The Third Circuit addressed the distinction between a deepening-insolvency cause of action and deepening insolvency as a theory of damages for an independent cause of action, such a malpractice. *See Seitz v. Detweiler, Hershey and Assocs., P.C.* (*In re CitX Corp.*), 448 F.3d 672, 677-78 (3d Cir. 2006). In *CitX*, the Court declined to acknowledge deepening insolvency as an independent form of corporate damage. *See id.* at 678. The Court did observe, however, "that deepening insolvency as a measure of damages merely replicate[d] malpractice damages" in that case. *See id.* at 678 n.9. "Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation." *See id.* at 678 (quoting Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549, 575 (2005)).

[15]    *See* Brief in Support at 13-14 (identifying the following portions of the Complaint: (1) paragraph 9, referring to "deepening insolvency" among alleged damages, (2) paragraph 107, referring to "increased insolvency" among alleged damages, and (3) paragraph 112(p), identifying Campbells Land as an "insolvent company").

[16]    Pursuant to Fed.R.Civ.P. 12(f), "[t]he court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." Notably, however, "[t]he standard to strike is strict. Rule 12(f) motions are 'highly disfavored' and the moving party must show that the presence of any surplus allegations is prejudicial." *See Morse v. Hare*, No. 2:19-cv-1142, 2020 WL 836234, at *5, 2020 U.S. Dist. LEXIS 27817, at *15 (W.D.Pa. Feb. 19, 2020)(footnote omitted). As Defendants failed to address the applicability of this rule entirely and in light of the strict standard imposed, the Court will not consider the request pursuant to Rule 12(f).

[17]    The case law cited by Defendants at Oral Argument does not convince the Court otherwise. For instance, in acknowledging that "a Rule 12(b)(6) motion may be granted as to portions of a complaint[,]" the court in *Merrell & Garaguso, Inc. v. Sunoco, Inc.*, refers to dismissal of "[a] Complaint, or any *claim included therein*,…where there is no cognizable theory to establish *a cause of action*." *See* No. 04-1770, 2004 WL 1849705, at *2, 2004 U.S. Dist. LEXIS 16598, at *4 (E.D.Pa. Aug. 17, 2004)(emphasis added).

Administrator is not pursuing a deepening insolvency claim, and there is no claim to dismiss under

Rule 12(b)(6) for failure to state a claim.

Alleged Violation of Ethics Rules

With respect to the alleged violations of Pennsylvania Rules of Professional Conduct set

forth in Count I of the Complaint, Defendants contend that pleading ethics violations is improper

such that reference to the rules should be stricken from the Complaint. *See* Brief in Support at 14-

15. The Rules of Professional Conduct do not constitute a significant portion of the Complaint.

The request to strike is related to a single paragraph within the lengthy pleading. *See* Complaint at

¶113.[18]

As addressed above, Defendants seek this relief pursuant to Fed.R.Civ.P. 12(b)(6) as

opposed to 12(f). Notably, the references to the rules of professional conduct are not stated as a

separate claim or claims. Further, to the extent the alleged violations may serve as evidence in the

trial before the District Court, this Court declines the request to strike as the allegations are not so

unrelated to be deemed unworthy of consideration. *See Morse*, 2020 WL 836234, at *6, 2020 U.S.

Dist. LEXIS 27817, at *16. *See also Nkansah v. Kleinbard LLC*, No. 19-4472, 2020 WL 920269,

at *8, 2020 U.S. Dist. LEXIS 33094, at *20 (E.D.Pa. Feb. 26, 2020) (denying request to strike

references to Pennsylvania Rules of Professional Conduct where the rules were not cited "to assert

a cause of action, but rather to interpret the parties' relationship and the defendants' professional

obligations"). Therefore, the request to dismiss or otherwise strike the references to the Rules of

Professional Conduct is denied.

---

[18]    As noted in the Defendants' Brief in Support, the reference within the Complaint to Pennsylvania
Rules of Civil Procedure appears to be a typographical error. *See* Brief in Support at 14 n.5.

Conclusion

Based on the foregoing, Defendants' Motion to Dismiss is denied. However, as set forth in

the Supplemental Joint Status Report dated May 16, 2022, the Plan Administrator has agreed to

strike the Reservation of Rights from the Complaint. Therefore, that provision is stricken. The

parties shall proceed and comply with the deadlines set forth in their Joint Status Report dated

April 4, 2022. An Order will be entered consistent with this Memorandum Opinion.

Date: <u>July 25, 2022</u>                    <u>  /s/ Carlota M. Böhm            </u>
                                          Carlota M. Böhm
                                          Chief United States Bankruptcy Judge

                              FILED
                              7/25/22 3:19 pm
                              CLERK
                              U.S. BANKRUPTCY
                              COURT - WDPA